BROWN, and others, Plaintiffs-Respondents, v. HAMMER-
MILL PAPER COMPANY, Defendant-Appellant.

Supreme Court

*No. 76–579. Argued February 26, 1979.—Decided March 27, 1979.*
(Also reported in 276 N.W.2d 709.)

For the appellant there was a brief by *Walter H. Piehler* and *Terwilliger, Wakeen, Piehler, Conway & Klingberg, S. C.* of Wausau, and oral argument by *Walter H. Piehler*.

For the respondents there was a brief by *Hiram D. Anderson, Thomas W. Bertz* and *Anderson, Fisher, Shannon, O'Brien & Rice* of Stevens Point, and oral argument by *Mr. Bertz*.

BEILFUSS, C.J.   This action arises because of a fire on December 16, 1970, which destroyed a potato warehouse owned by the plaintiff-respondent Frontier Packers, Inc., and located in West Almond, Portage county. A truck owned by Ruan Leasing Company and insured by Carrier's Insurance Company was backed up to the loading dock of the warehouse. A portable charcoal or gas heater was overturned and started a fire in the trailer unit which quickly spread throughout the trailer and then to the warehouse. The warehouse was destroyed as well as personal property in the warehouse owned by Frontier Packers, Inc., Bar-B Ranch, Inc., and Albert

Brown. Albert Brown and his wife were the sole owners of the two corporations.

On May 20, 1971, Brown and the two corporations commenced an action against the leasing company that owned the truck, the trucking company to which the vehicle was leased at the time of the incident, their respective liability insurers and other insurance carriers. A settlement was eventually negotiated which required the execution of releases by the plaintiff-property owners, the payment of $80,000 by Carrier's Insurance Company, and the dismissal of the action on the merits. A second action commenced by West Bend Mutual Insurance Company against Carrier's Insurance Company for subrogated rights arising out of the same accident was also disposed of. The releases were executed in April, 1972 and the action dismissed upon its merits in May, 1972.

On July 28, 1975, Brown and his two corporations commenced the present action. It was brought against defendant-appellant, Hammermill Paper Company, manufacturer of certain polyethylene material used in the construction of the warehouse. Hammermill described the product as Tripl-Tek, "a laminated paper for use in construction for under slab and overfill uses." The complaint includes allegations of negligence, breach of express and implied warranties and strict liability in tort both for the sale of an unreasonably dangerous and defective product and for failure to give adequate instructions and warnings regarding its proper use. The damages were alleged to be about $247,000.

On August 23, 1976, the defendant filed an answer denying liability on all grounds and asserting various affirmative defenses. Among these was the defense that the action was barred by the prior action which was dismissed on the merits after a settlement was reached as well as by various releases signed by the property

owners as part of the settlement. Plaintiffs' reply to the affirmative defenses was filed September 23, 1976.

Hammermill then moved for summary judgment based on the releases executed by the plaintiffs and on the order of dismissal in the previous action. In support of the motion the following documents were submitted: the affidavit of Walter H. Piehler, one of the defendant's attorneys; the deposition of plaintiff Albert Brown; the releases executed by the plaintiffs and their liability insurer; and a copy of the complaint, the stipulation and order of dismissal in the first action. In addition, the defendant Hammermill asked the court to take judicial notice of the two prior actions in the circuit court for Portage county.

The stipulation dated May 5, 1972, declared as follows:

"IT IS HEREBY STIPULATED . . . that the complaint and each and every cause of action therein stated on behalf of each and all of the plaintiffs may be dismissed upon the merits and without costs and without further notice to any of the parties hereto, the parties hereto having settled and compromised their differences.

"The plaintiffs herein warrant that they know of no injuries to any person arising out of said fire and stipulate and agree that they will hold harmless the defendants against any claims against defendants for personal injury arising out of said occurrence, in a ratio to the percentages each party received from the settlement, and limited to the amount of each party plaintiff's net recovery.

"IT IS FURTHER STIPULATED that a release of all claims arising out of the transaction involved in this lawsuit from the plaintiffs will be delivered to the attorneys for the defendants as part of this compromise settlement."

The order of dismissal entered May 8, 1972, on the basis of the stipulation and on motion of the plaintiffs contained the following language:

"... the Court being satisfied that the compromise settlement has been consummated;

"IT IS ORDERED, that the complaint herein and each and every cause of action therein stated on behalf of all of the plaintiffs be and hereby is dismissed upon the merits. ..."

The releases signed by Albert Brown on April 20, 1972 on behalf of the corporate plaintiffs stated that the corporation

"... does hereby release and forever discharge Ruan Leasing Company, Elmer Moser, Jeff Moser, Leonard Hefel, Ismael Benavides, Marcus Zoningo and Carrier Insurance Company, and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims, demands, damages, costs, expenses, actions and causes of action arising from all property damage, loss suffered, or damages of any kind sustained as a result of an accident and fire that occurred on or about the 16th day of December, 1970, at or near West Almond, Portage County, Wisconsin, when Frontier Packers' packing shed and contents was destroyed by fire.

"The said undersigned corporation hereby agrees, as a further consideration and inducement for this compromise settlement, that such settlement shall apply to all unknown and unanticipated damages or loss resulting from the said accident, casualty or event, as well as to damage or loss now known or disclosed.

"It is understood that the parties hereby released admit to no liability of any sort by reason of the said accident, and that said payment and settlement in compromise is made to terminate further controversy respecting all claims for damages or loss that the said undersigned corporation has heretofore asserted or that it or its successors or assigns might hereafter assert because of said accident."

The release executed by Albert Brown on his own behalf and by Florence Brown his wife was a form release. It differed from the corporate releases in two respects. First, the release specifically discharged only

the named defendants; the expansive phrase "and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns. . . ." was not included. Second, it contained a reservation of rights clause whereby the parties released expressly reserved any claims they might have against Brown for damages arising out of the accident; this clause, however, had been crossed out.

An affidavit of Albert Brown was submitted by the plaintiffs in opposition to the motion. The substance of the affidavit is essentially as follows: that the settlement of $80,000 was made in lieu of a long and expensive trial and fell far short of compensating the plaintiffs for the losses sustained; that the dismissal of the present action was effective only against the named defendant in that action and, consequently, was not a bar to the present action; that the releases executed by the plaintiffs were intended to release only those parties named in the releases, namely, the defendants in the prior action; and that the Hammermill Paper Company was not a joint tortfeasor with those parties named as defendants in the first action, since Hammermill's acts were separate and distinct from the negligent acts of the defendants in the first action.

The trial court denied Hammermill's motion for summary judgment in an order dated January 28, 1977. The court's written decision on the motion specified that there were several factual issues involved in the matter, namely, the intention of the parties to the release with regard to its scope and Hammermill's status as a joint or separate tortfeasor, which could not be resolved on the motion.

Sec. 802.08(2), Stats., provides that summary judgment

". . . shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

Sec. 802.08, Stats., replaced sec. 270.635 (1973). This court in *Wright v. Hasley*, 86 Wis.2d 572, 273 N.W.2d 319 (1979), examined the effect of the new rule on the scope of appellate review of the trial court's decision to grant or deny summary judgment. The court, concluding that the former "abuse of discretion" standard was no longer completely controlling, gave the following description of the new standard at 577–78:

"The basic standard to be applied by the trial court in determining whether summary judgment is appropriate, *viz.*, whether there is an issue of material fact in dispute, has not changed.

"The new rule imports, however, a changed standard of appellate review of a summary judgment or an order denying a motion for summary judgment. Former sec. 270.635, Stats. 1973, prescribed the circumstances under which summary judgment 'may be entered'; the new rule prescribes the conditions under which it 'shall be rendered.' . . .

" . . .

"We view the mandatory language of the new rule as calling for a more exacting appellate scrutiny of the trial court's decision not to grant summary judgment. . . In view of the changed language of the summary judgment rule, we can, as a general proposition, no longer accord the trial court wide latitude in deciding to grant or deny summary judgment . . . We, like the federal appellate courts, proceed here to review the trial court's decision by applying, just as the trial court applied, the standards and methods set forth in the new rule. [Cases omitted.] We would be required to reverse the order at issue here if on the record there appears 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' "

The trial court in this case denied Hammermill's motion for summary judgment, finding that the record

showed there were unresolved factual disputes on two material issues: the intended scope of the releases and the status of Hammermill as a joint tortfeasor. In this review we seek to determine whether the record, which includes the pleadings, answers to interrogatories, depositions and affidavits, does in fact present genuine issues of material fact with respect to those matters.

The effect which the common law attached to a general release given to one wrongdoer on other tortfeasors who were jointly liable for the injury is summarized as follows in 2 Williston, *Contracts* (3d ed. 1959), Release of Joint Tortfeasors, pp. 714–19, sec. 338A:

> "Sec. 338A. *Release of Joint Tortfeasors*. The liability of two or more persons jointly concerned in committing a tort is joint and several and at common law the unqualified release of one releases all, for the reason that, since there is but a single injury there can be but one complete satisfaction for the wrong and an unqualified release imports satisfaction . . . .
> " . . .
> " 'Plaintiff's general release operated not only in personam on the releasees and their liability, but also in rem on the releasor's cause of action. The decisive thing now is not whether plaintiff actually released this defendant, or intended to do so, or got full compensation, but rather, and only, whether she has discharged her whole cause of action. That she did so is plain. The destruction of it is the primary result from which follows necessarily the secondary one of releasing all the wrongdoers, whether their wrongs were concurrent or successive. The entire cause of action being gone, no one can remain liable.' " Citing *Ruditis v. Gallop* (DCD. Minn.) 162 F. Supp. 270 (1958). *See also* Prosser, *Torts* (4th ed.), Release, p. 301 *et seq.*, sec. 49.

This rule applied to independent tortfeasors whose concurrent acts jointly caused a single injury as well as to classical joint tortfeasors who acted in concert.[1]

---

[1] Prosser, *Torts* (4th ed.), Release, p. 301.

Courts sought to avoid the drastic effects of the rule,

"Where the intention of the parties as shown by the release was not to satisfy the whole debt or operate as an accord and satisfaction and thus extinguishing the cause of action, some courts, including ours, treated such a release as having the effect of a covenant not to sue. This same technique was carried over into cases involving joint tort-feasors . . . ." *Pierringer v. Hoger,* 21 Wis. 2d 182, 186, 124 N.W.2d 106 (1963). *See also Ellis v. Esson,* 50 Wis. 138, 6 N.W. 518 (1880), *Kropidlowski v. Pfister & Vogel Leather Co.,* 149 Wis. 421, 135 N.W. 839 (1912).

Recent legal history has witnessed extensive changes in the common-law rule:

"The clear trend of the law is to hold that an agreement releasing one joint tortfeasor must be construed in accordance with the intention of the parties. It is generally agreed that if the document shows on its face that it was not the intention of the injured party to relinquish his claim against the other joint tortfeasors, as where he expressly reserves his right of action against them or when it appears that the payment he received was not accepted as full satisfaction, it will be regarded as a covenant not to sue, no matter what its form.
"As the courts have said, ' "the issue of whether a separate settlement with one joint tortfeasor is made in full satisfaction or is made as a lesser compromise with the purpose of pursuing the other tortfeasors, is a factual one which will properly turn on the intention of the parties. . . ." ' . . . ." 2 Williston, *supra,* at 722–23.

A release is a unilateral contract and the intention of the parties as to its scope and effect is relevant.[2] In con-

---

[2] *See Peiffer v. Allstate Ins. Co.,* 51 Wis.2d 329, 187 N.W.2d 182 (1971); *Pokorny v. Stastny,* 51 Wis.2d 14, 186 N.W.2d 284 (1971); *Plummer v. Leonhard,* 44 Wis.2d 686, 172 N.W.2d 1 (1969); *Rensink v. Wallenfang,* 8 Wis.2d 206, 99 N.W.2d 196 (1959); *Nelson v. Boos,* 7 Wis.2d 393, 96 N.W.2d 813 (1959).

struing a release the court must read the instrument in its entirety. The intent of the parties must be sought from the whole and every part of the instrument and from the surrounding conditions and circumstances. While great liberality is allowed in construing releases, the operation will be limited to those things within the contemplation of the parties at the time of execution of the release. The determination of the intent of the parties to a release and of the scope of the release is a question of fact for the trier of facts.[3]

The issue of the intended scope of a release is not determined by the form of the instrument alone or by the mere use of the term "release" in the documents in question.[4] It has been said that the ultimate test of the intended scope of such documents is whether the obligee has received "full satisfaction, or that which the law must consider as such." *Lovejoy v. Murray*, 70 U.S. 1 (1865); 2 Williston, *supra*, at 723. The difference between the amount of damages actually sustained and the sum paid by the obligor under the terms of the settlement agreement is relevant to a determination of the factual question whether the amount received from the tortfeasor was intended to be and was in fact received in full satisfaction of the wrong.[5] Other facts which have been held to bear on the matter of the intent of the parties concerning the scope of a release have been that the release specifically named or referred to no person other than the original obligor and that the consideration was

---

[3] *Nelson v. Boos, supra*, 7 Wis.2d at 398; *Plummer v. Leonhard, supra*, at 692; *Rensink v. Wallenfang, supra*, at 214.

[4] *Kropidlowski v. Pfister & Vogel Leather Co.*, 149 Wis. 421, 135 N.W. 839 (1912); 15 Williston, *Contracts* (3d ed.), The Interpretation and Construction of Releases, p. 472, sec. 1825.

[5] *Ellis v. Esson*, 50 Wis. 138, 6 N.W. 518 (1880); *Kropidolowski v. Pfister & Vogel Leather Co., supra*, 149 Wis. at 423.

accepted as a compromise and final settlement of all claims between the parties rather than as full compensation for all injuries. *Krenz v. Medical Protective Co.,* 57 Wis.2d 387, 402, 204 N.W.2d 663 (1973).

The releases involved in this case were drawn up pursuant to stipulation in a prior action and resulted in a dismissal on the merits of, in the words of the trial court's order, "the complaint and each and every cause of action therein stated on behalf of each and all of the plaintiffs." That action was begun by Brown and the corporations against Carrier's Insurance Company, Ruan Leasing Company and others, not including Hammermill Paper Company. Three of the documents, entitled "Release of All Claims," discharged the named defendants in the earlier action and "any other person, firm or corporation charged or chargeable with responsibility or liability. . . from any and all claims, demands, damages, costs, expenses, actions and causes of action arising from all property damage. . . sustained as a result of an accident and fire. . . ." By their terms, they were a "settlement in compromise . . . made to terminate further controversy respecting all claims for damages or loss. . . ." The fourth release, signed by Albert Brown in his behalf and specifically releasing the named defendants only, did not contain the words "and any other person, firm or corporation."

Where it is found that the agreement is intended to be a true general release of all claims with no express reservation of any cause of action against other wrongdoers, the fact that the release is restricted to named individuals is immaterial. It is general as to those individuals and therefore under present Wisconsin case law is sufficient to release joint tortfeasors because the liability of the named individuals includes the damages attributable to the joint tortfeasors. *See Krenz v. Medical Protective*

*Co., supra,* 57 Wis.2d at 393–94. However, the difference in language between the releases here is relevant to the factual question whether the instruments were in fact intended by the parties to be general releases at all or something less than that.

The deposition of Albert Brown, submitted by the appellant in support of summary judgment contained the following declarations: Brown's loss of personal property amounted to $2,000; Brown did not sue Hammermill Paper at the time of the first action because, in Brown's words, "I don't think at that time that we probably knew as much as we do about the inflammability of the paper," and the releases "released the individuals and the insurance company."

The affidavit of Albert Brown in opposition to the motion for summary judgment declared the following: that the settlement of $80,000 was nowhere near compensating the plaintiffs for their loss; that it was the purpose of the releases to discharge only those parties named in the release, namely, the defendants in the prior action; that evidence of the liability of Hammermill Paper Company was not obtained until much later.

The releases in the present case were not Pierringer-type[6] releases in their form. They did not purport to discharge an appropriate fractional portion of the damages determined by the percentage of the obligor's causal negligence. They contained no reservation of rights clause, no indemnification agreement for any amounts the wrongdoers might be required to pay on a judgment for contribution and no agreement to satisfy any judgment Brown and the other plaintiffs might later recover for the full cause of action against a joint tortfeasor to the extent of the fractional part of the cause of action released.

---

[6] *Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963).

There are material differences in the factual allegations of the parties with respect to the nature and scope of the settlement agreements. The conflict cannot be resolved merely by examining the face of the instruments. The circumstances surrounding the drawing up of the releases, the fact that the agreements arose within the context of a lawsuit involving several named defendants —not including Hammermill, the difference between the amount received in settlement of the prior claims and the total damages sustained, Brown's statements in the affidavit and deposition regarding the intended limited scope of the releases, the fact that the claims involved in the prior action which gave rise to the releases concerned negligent conduct on the part of the prior defendants and their agents and employees, whereas the present suit is grounded on products liability claims—all these are material matters of fact which bear on the ultimate factual issue of the intention of the parties as to the scope and effect of the instruments.

Releases of joint tortfeasors may and do take many forms having the characteristics and legal effect of a covenant not to sue, or a partial satisfaction of the damages and of the cause of action, or an accord and satisfaction of the whole cause of action, or a discharge from liability, or various combinations thereof. *Pierringer v. Hoger, supra,* 21 Wis.2d at 185. Before a court can address the legal question of the effect of the releases on any cause of action which the plaintiffs may have against Hammermill, the factual question of the intended scope of the instruments must be resolved. This question is a critical one, particularly in light of the modern trend which holds that,

". . . a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to main-

tain it." Prosser, *Torts* (4th ed.), *supra,* at 304. *See also Krenz v. Medical Protective Co., supra,* 57 Wis.2d at 398–401.

The issue of the intended scope and legal effect of the releases involved in this case cannot be decided on the present record. We believe an issue of material fact exists and that the trial court correctly denied the Hammermill motion for summary judgment.[7]

The respondents make the argument (and the trial court concluded) that the motion for summary judgment was also properly denied because there exists a disputed issue of material fact regarding whether Hammermill Paper Company is a joint or independent tortfeasor. This position has limited merit because, as stated above, the rule regarding the scope of releases applies indiscriminately to both types of tortfeasors. This is not to suggest, however, that this distinction might not be relevant to the factual issue of the intent of the parties as to the nature and effect of the release.

*By the Court.*—Order affirmed.

---

[7] Since the effect to be given the dismissal of the first action also turns on the disputed factual issue of the intent of the parties, cf. 27 C.J.S., *Dismissal and Nonsuit,* p. 366, sec. 32, the trial court was also correct in rejecting the paper company's argument that the dismissal of the prior action acted as a bar to the present one and was further grounds for summary judgment in its favor.