LeRoy J. Arnold and Karen Arnold, his wife,
Plaintiff-Appellants,

v.

Shawano County Agricultural Society, Shawano
County, Shawano County Fair Board, and American
Home Assurance Company, Defendants-Respondents.†

Court of Appeals

*No. 81–1039. Submitted on briefs November 16, 1981.—Decided
February 9, 1982.*
(Also reported in 317 N.W.2d 161.)

For the appellants there was a brief by *Ralph M. Lauer* and *Lauer, Meyer & Sage* of Clintonville.

For the respondents there was a brief by *Thomas J. Arenz, Michael J. Lund* and *Frisch, Dudek and Slattery, Ltd.,* of Milwaukee.

Before Foley, P.J., Dean and Cane, JJ.

FOLEY, P.J. LeRoy Arnold and his wife, Karen, appeal the trial court's summary judgment dismissing their complaint for damages for injuries LeRoy received in an automobile racing accident. The trial court concluded that an agreement LeRoy signed before he participated in the race released all defendants from liability.[1] We conclude that the agreement, signed only by LeRoy, does not release the defendants from liability on Karen's claim. We also conclude that disputed issues of material fact exist concerning the intended scope of the release. We therefore reverse the trial court's summary judgment and remand the matter for trial.

LeRoy was injured at the Shawano County fairgrounds during a stock car race sponsored by the Shawano County Agricultural Society. His car crashed through a guardrail surrounding the race track, struck a utility pole and lumber pile, and caught fire. Race track personnel used chemicals to extinguish the fire. The Arnolds allege, in addition to other acts of negligence, that the race track lacked proper emergency rescue equipment, that race track personnel were not properly trained in the use of emergency equipment, and that LeRoy is a quadriplegic as a result of being poisoned by gases from the fire extinguishing chemicals.

The defendants claim that they have no liability to either LeRoy or Karen because LeRoy signed an agreement before the race releasing the defendants from liability. The agreement provided:

---

[1] The Arnolds argue that Shawano County has not been dismissed from the action because it did not join in the motion for summary judgment. The record shows that counsel for the other defendants brought the motion in behalf of all defendants. We note, however, that the answer alleges that the Shawano County Fair Board is not a legal entity and therefore lacks the capacity to be sued. On remand, the trial court must determine whether the Fair Board is a proper party to this action.

IN CONSIDERATION of being permitted to enter for any purpose the RESTRICTED AREA (herein defined as the area to which admission for the general public is prohibited, including but not limited to the pit area, racing surface and infield, including walkways, concessions and other appurtenances therein) each of the Undersigned, for himself and personal representatives, assigns, heirs and next of kin, agrees, and on the direct representation that he has, or will prior to the inception of the racing program, inspect such RESTRICTED AREA and he does further warrant that his participation in the scheduled racing program and his entrance upon the RESTRICTED AREA, constitute an acknowledgment that he had inspected the RESTRICTED AREA and that it is safe and reasonably suited for the purposes of the racing program:

1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the Promoter, Participants, Racing Association, Track Operator, Track Owner, Landowner, and each of them, their officers, and employees, all for purposes herein referred to as RELEASEES, from all liability to the Undersigned, his personal representatives, assigns, heirs and next of kin for all loss of damage, and any claim or demands therefor, on account of injury to the person or property or resulting in death of the Undersigned, whether caused by negligence of Releasees or otherwise while the Undersigned is upon the Restricted Area . . . .

This agreement releases the defendants from liability for their own negligence. Contracts exculpating parties from their own negligence have been found valid in Wisconsin. *See, e.g., State Farm & Casualty Co. v. Home Insurance Co.*, 88 Wis. 2d 124, 127–30, 276 N.W.2d 349, 350–51 (Ct. App. 1979). Releases from liability for injuries arising in connection with auto racing have also generally been held valid and not contrary to public policy. *See Schlessman v. Henson*, 83 Ill. 2d 82, 413 N.W.2d 1252, 1254 (1980); *LaFrenz v. Lake County Fair Board*, 360 N.E.2d 605, 607 (Ind. App. 1977); *Tope v. Water-*

*ford Hills Road Racing Corp.*, 81 Mich. App. 591, 265 N.W.2d 761, 764 (1978).

Even assuming the release bars LeRoy's recovery, it does not bar Karen's action for loss of consortium. A spouse's action for loss of consortium for an injury to the other spouse is a separate cause of action that never belonged to the other spouse. *Schwartz v. City of Milwaukee*, 54 Wis. 2d 286, 293, 195 N.W.2d 480, 484 (1972). Accordingly, it is not subject to defenses, except contributory negligence, which are available against the other spouse's cause of action. *Id.* In addition, "there is no presumption of agency between a husband and wife merely by virtue of the marital relationship." *Smith v. Osborn*, 66 Wis. 2d 264, 278, 223 N.W.2d 913, 920 (1974). As Karen did not sign the release, she did not release her separate cause of action. *Accord Barker v. Colorado Region-Sports Car Club of America, Inc.*, 532 P.2d 372, 378 (Colo. App. 1975). The summary judgment dismissing her cause of action must therefore be reversed.

LeRoy claims that summary judgment was also improperly granted as to his cause of action because the release does not specifically identify the parties released and does not include within its definition of "Restricted Area" those areas outside the guardrail. He also contends that the parties to the agreement did not intend it to encompass the negligence occurring in the course of rescue operations.

This court will reverse a grant of summary judgment if the record shows that material facts are in dispute or if a legal issue was incorrectly decided. *Prince v. Bryant*, 87 Wis. 2d 662, 666, 275 N.W.2d 676, 678 (1979). The legal effect of an agreement may properly be determined on a motion for summary judgment, but "where there is a dispute as to the intent of the parties to the agreement,

a fact issue is presented, and summary judgment is inappropriate." *Younger v. Rosenow Paper & Supply Co.,* 51 Wis. 2d 619, 629–30, 188 N.W.2d 507, 512 (1971) [footnote omitted] ; *see also Lecus v. American Mutual Insurance Co.,* 81 Wis. 2d 183, 190, 260 N.W.2d 241, 244 (1977).

Although releases of the type signed by LeRoy have generally been held valid, because they operate to protect parties from the consequences of their own negligence they are not favored and are strictly construed against the party seeking protection. *See Barker,* 532 P.2d at 377 ; 15 S. WILLISTON ON CONTRACTS § 1825, 479–80 (3d ed. 1972) ; 57 Am. Jur. 2d *Negligence* § 31 (1971). In addition, such releases will not bar claims that were not within the contemplation of the parties at the time of execution of the agreement. *Brown v. Hammermill Paper Co.,* 88 Wis. 2d 224, 234, 276 N.W.2d 709, 713 (1979) ; *Johnson v. Thruway Speedways, Inc.,* 63 A.D.2d 204, 407 N.Y.S.2d 81, 83 (1978).[2]

We conclude that the language of the release sufficiently identifies the parties to be released. The agreement defines releasees as "the Promoter, Participants, Racing Association, Track Operator, Track Owner, Landowner, and each of them, their officers, and employees . . . ." The complaint alleges that the defendants, Shawano County Agricultural Society, Shawano County and Sha-

---

[2] The court in *Brown v. Hammermill Paper Co.,* 88 Wis. 2d 224, 234, 276 N.W.2d 709, 713 (1979), recognized that a release that is intended to be in satisfaction of already known claims is to be liberally construed against the party seeking to escape its operation. *See also Rensink v. Wallenfang,* 8 Wis. 2d 206, 212–13, 99 N.W.2d 196, 199–200 (1959). Because the release involved in this case, unlike the releases considered in *Brown* and *Rensink,* is intended to operate prospectively, we conclude that it is to be strictly construed against the party seeking its protection.

wano County Fair Board, are the owners-operators of the race track. We agree with the trial court's determination that the functional rather than the specific identification of those released made clear to LeRoy that the release was to apply to all parties associated with the race.

We also conclude that LeRoy's allegations that the defendants were negligent in maintaining the race track's surface, its guardrail, and the area adjacent to the track were properly resolved by summary judgment. The language of the release clearly indicates an intent by the parties to relieve the defendants of liability for injuries resulting from a broad range of accidents that occur in auto races. In *Schlessman,* a race driver was injured in an accident that was caused by the collapse of a portion of the race track. In concluding that a release identical to the release signed by LeRoy relieved the race track's owner from all liability, the Illinois Supreme Court stated:

[A] myriad of factors, which are either obvious or unknown, may singly or in combination result in unexpected and freakish racing accidents. Experienced race drivers . . . are obviously aware of such occurrences and the risks attendant to the sport of auto racing. . . . In adopting the broad language employed in the agreement, it seems reasonable to conclude that the parties contemplated the similarly broad range of accidents which occur in auto racing. *Schlessman,* 413 N.E.2d at 1254.

We conclude, however, that there are disputed questions of material fact that must be resolved before the court can determine whether the release bars LeRoy's recovery for all of the allegedly negligent acts. The release covers negligent acts of the defendants while LeRoy is upon the "Restricted Area." The agreement defines that area as "the area to which admission for the

general public is prohibited, including but not limited to the pit area, racing surface and infield, including walkways, concessions and other appurtenances therein . . ." Karen's affidavit states that LeRoy sustained his injuries when race track personnel improperly used fire extinguishing chemicals after LeRoy's car had crashed through the track's guardrail and had left the track. Whether these acts occurred outside the restricted area is a question of fact that can only be resolved by the trier of fact.

[11, 12]

Similarly, the intended scope of the release presents a disputed material fact question. In accordance with the reasoning of *Schlessman,* the release signed by LeRoy relieves the defendants of liability for injuries resulting from a broad range of accidents that occur in auto racing. Here, however, the acts or omissions of the rescue squad are analogous to the negligent act considered in *Johnson* where a race spectator was struck and injured by a maintenance vehicle that was not involved in the race. In reversing the trial court's grant of summary judgment, the court concluded that the release signed by Johnson could be construed to apply only to injuries associated with the risks inherent in automobile racing. *Johnson,* 407 N.Y.S.2d at 83. This was based on the rule that a release, which is general in its terms, will not bar claims that were not within the contemplation of the parties at the time the release was signed. *Id.* Whether injury from negligent rescue or improper use of chemicals were risks that the parties contemplated their release to cover depends upon the parties' intent. As such, they present questions of fact. Questions of fact are not appropriately resolved by summary judgment.[3]

---

[3] The record does not indicate which of the defendants is responsible for conducting rescue operations. Accordingly, sum-

The defendants contend that regardless of the court's construction of the release clause of the agreement, the agreement's indemnity provisions bar LeRoy's claim. The indemnity clause requires LeRoy to indemnify the defendants for any losses they incur "due to the presence of the undersigned [LeRoy] in or about the Restricted Area and whether caused by the negligence of the Releasees or otherwise."

 We conclude that the agreement's indemnity provisions do not require LeRoy to indemnify the defendants for losses they may incur as a result of damages to LeRoy. Indemnification agreements must be distinguished from exculpatory releases.

"An exculpatory clause is one which excuses one party from liability for otherwise valid claims which may be made against him by another. . . . An Indemnification or Hold Harmless Agreement . . . is an agreement whereby one party to a lease or other contract agrees to protect the other from claims for loss or damage made against the indemnitee by a third party."

COLLINS & DUGAN, *Indemnification Contracts—Some Suggested Problems and Possible Solutions,* 50 Marq. L. Rev. 77 (1977), *quoting* LEWY, *The Use of Exculpatory Clauses Affecting Real Property, Leases, and Hold Harmless Agreements and the Insurance Implications Involved,* 46 Chi. B. Record 131 (Dec. 1964); *see also Hogeland v. Sibley, Lindsay & Curr Co.,* 42 N.Y.2d 153, 397 N.Y.S. 2d 602, 366 N.E.2d 263, 267 (1977); Annot., 4 A.L.R.4th 798, 800, n. 2 (1981).

 A contract is to be construed to give a reasonable meaning to each of its provisions, and a construction that

mary judgment may have been properly granted to some of the defendants insofar as they had no connection with or control over rescue operations.

would render any of its provisions meaningless, inexplicable, or mere surplusage is to be avoided. *Goebel v. First Federal Savings & Loan Ass'n*, 83 Wis. 2d 668, 680, 266 N.W.2d 352, 358 (1978). This rule of construction applies where, as here, an agreement contains one clause releasing a party from liability or limiting that party's liability, and another clause providing for that party's indemnification. *See Vallance & Co. v. De Anda*, 595 S.W. 2d 587, 591 (Tex. Civ. App. 1980). If we were to construe the indemnity provisions to cover LeRoy's own losses, the release clause would then be mere surplusage because the indemnity provisions alone would completely protect the defendants.

*By the Court.*—Judgment reversed and cause remanded.