Kyle F. BALK, Gemma Balk and Carl Balk,
Plaintiffs-Respondents,

v.

FARMERS INSURANCE EXCHANGE, a foreign
insurance company, Defendant-Appellant.†

Court of Appeals

*No. 85–2126. Submitted on briefs November 12, 1986.—March
26, 1987.*

(Also reported in 405 N.W.2d 792.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Robert R. Studt* and *Allen A. Arntsen* and *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

For the plaintiffs-respondents the cause was submitted on the brief of *Thomas H. Strakeljahn* and *Hoskins, Brown & Kalnins* of Lancaster.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. Farmers Insurance Exchange appeals a judgment requiring it to pay $28,683.53 damages which the Balks sustained because of Karla Daentl's negligent operation of an automobile owned by Joseph Roberts. Kyle Balk was injured while a

passenger in the automobile. Daentl was found by a jury to have been 55% negligent while Roberts was found 45% negligent for entrusting the operation of the car to her. Wisconsin Mutual insured Roberts' automobile and the liability of Roberts as the named insured and Daentl as an "insured person," but its policy limits were $25,000.[1] Farmers also insured the liability of Daentl under an automobile accident policy with $100,000 limits.[2]

Prior to trial, the Balks, by a *Pierringer*[3] release, released Roberts and Wisconsin Mutual from all

---

[1] We assume that Wisconsin Mutual's policy limits were $25,000 for all coverage provided for each occurrence and not for each insured. The policy states: "We will pay no more than these maximums regardless of the number of vehicles described in the Declarations, insured persons, claims, claimants or policies, or vehicles involved in the occurrence." *Cf. Miller v. Amundson,* 117 Wis. 2d 425, 430, 345 N.W.2d 494, 497 (Ct. App. 1984.) (language construed under 1977 version of omnibus coverage statute to require policy limits coverage for each insured).

[2] While the parties refer to Farmers as the excess insurer, Farmers is not in fact an excess insurer which had the opportunity to adjust its premium rates on the basis that there was an underlying policy purchase by the same insured. Like Travelers Insurance Company in *Loy v. Bunderson,* 107 Wis. 2d 400, 417–18, 320 N.W.2d 175, 185 (1982), Farmers had the contractual duty to provide the insured with "dollar-one" coverage.

[3] *Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1983). In *Pierringer,* at 184–85, 124 N.W.2d at 108, each release provided the plaintiff "does hereby release and discharge, that fraction and portion and percentage of his total causes of action and claim for damages against all parties ... which shall hereafter, by further trial or other disposition of this or any other action, be determined to be the sum of the portions of fractions or percentages of causal negligence for which any or all of the settling parties hereto are found to be liable ...." The releases reserved the balance of the plaintiff's cause of action against the nonsettling party. *Id.*

liability in consideration of $24,999. Simultaneously, in consideration of $1, the Balks entered into a "Special 'Loy v. Bunderson'[4] Release" which included

[4]*Loy v. Bunderson, supra* note 2. The pertinent portions of the release provide:

(1) · *Partial Release*

To the specific extent hereinafter stated, Kyle F. Balk, Gemma Balk and Carl Balk acquits and forever discharges Karla A. Daentl, and any other firm, person or corporation which may be responsible for any negligence of Karla A. Daentl, of and from any and all actions, causes of action, claims, demands, damages, injuries, costs, loss of services, expenses and compensation, on account of or in any way growing out of and all known and unknown injuries or damage resulting to or to result from the accident on or about the 14th day of January, 1983, which resulted in injuries to Kyle F. Balk (hereinafter "accident"); this release is a complete release of and from any and all claims up to but not exceeding Twenty-Five Thousand Dollars ($25,000.00).

This release hereby credits and satisfies that portion of the total amount of damages of the undersigned which has been caused by the negligence, if any, of Karla A. Daentl or any other firm, person or corporation responsible for any such negligence of Karla A. Daentl, to the extent of Twenty-Five Thousand ($25,000.00) as if the full sum of Twenty-Five Thousand Dollars has been paid; this release, however, does not purport to satisfy any obligation of said Daentl on the basis of satisfying or releasing any percentage of negligence which might be attributed to him by a judge or jury in a later proceeding. (In other words, this is not a "Pierringer"-type release).

(2) *General Release*

Kyle F. Balk, Gemma Balk and Carl Balk acquits and forever discharges Wisconsin Mutual Insurance Company of and from any and all actions, causes of actions, claims, demand, damages, injuries, costs, loss of services, expenses and compensation on account of or in any way growing out of any and all known and unknown injuries or damage resulting to or to result from the accident that occurred on or about the 14th day of January, 1983 which resulted in the injury to Kyle F. Balk.

(3) *Release of Excess*

Kyle F. Balk, Gemma Balk and Carl Balk acquits and forever discharges Karla A. Daentl of and from any and all actions, causes

a release of Daentl and Wisconsin Mutual from all liability up to but not exceeding $25,000. Upon their motion, the court dismissed Roberts and Wisconsin Mutual pursuant to the *Pierringer* release and Daentl and Wisconsin Mutual pursuant to the *Loy* release.

of action, claims, demands, damage, injuries, costs, loss of services, expenses and compensation, which are in excess of the monetary limits of the liability insurance policy issued by Farmers Insurance Exchange issued to defendant Donovan A. Daentl under policy number 34–8710 7177 (hereinafter "Farmers") or any other company (except Wisconsin Mutual Insurance Company) which policies provide coverage for said accident. The purpose of this provision is to release all claims against Karla A. Daentl which are not covered by the monetary limits of applicable insurance.

(4) *Dismissal/Covenant Not to Sue*

Kyle F. Balk, Gemma Balk and Carl Balk further agrees and stipulates to the dismissal, with prejudice, of the pending action against Karla A. Daentl, personally, and Wisconsin Mutual Insurance Company, but not as to Farmers or any obligation Farmers may have by virtue of liability insurance coverage applicable to Karla A. Daentl's alleged negligence in said action. Kyle F. Balk, Gemma Balk and Carl Balk also agree to never institute any suit or action at law or in equity against Karla A. Daentl, personally, or Wisconsin Mutual Insurance Company by reason of any claims the undersigned now has or may hereafter acquire relating to said accident. Kyle F. Balk, Gemma Balk and Carl Balk hereby binds his heirs, legal representatives and assigns to this covenant.

(5) *Reservation of Right*

This release is given for the purpose of effecting a settlement of Twenty-Five Thousand Dollars ($25,000.00) policy limits coverage afforded by Wisconsin Mutual Insurance Company to Karla A. Daentl. Kyle F. Balk, Gemma Balk and Carl Balk hereby expressly reserve any claims they might have against Joseph A. Roberts and Wisconsin Mutual Insurance Company until they have been released in a separate Pierringer release. Kyle F. Balk, Gemma Balk and Carl Balk expressly reserves any claim they have in excess of Twenty-Five Thousand Dollars ($25,000.00) against Karla A. Daentl except subject to the provisions providing for dismissal of Karla A. Daentl from the action and covenant not to sue Daentl set forth in paragraph four hereof.

The order recognized the right of the Balks to continue their direct action against Farmers.

After trial, Farmers moved the court for judgment against it on the verdict in the amount of $4,525.94. Farmers arrives at this figure as follows:

| | | |
|---|---|---|
| Verdict | = | $53,683.53 |
| Roberts' liability satisfied by *Pierringer* release (45% of verdict) | = | $24,157.59 |
| | | $29,525.94 |
| Daentl's liability satisfied by *Loy* release | = | $25,000.00 |
| | | $ 4,525.94 |

The court, however, granted the Balks' motion for judgment on the verdict. The court found that the intention of the parties to the releases was to satisfy $25,000 of a verdict in favor of the Balks. The court gave effect to that intention and entered judgment against Farmers for $28,683.53, the amount of the verdict exceeding $25,000.[5]

We conclude that the judgment as constructed by the court gave effect to the *Pierringer* release. We further conclude that the court's finding is not clearly erroneous that the parties to the releases did not intend to extinguish the Balks' claim against Roberts and Daentl and their insurers except to the extent of the policy limits of $25,000 paid by Wisconsin Mutual to obtain the *Pierringer* and *Loy* releases. Further, the court's finding that the parties intended the *Loy*

---

[5]The Balks gave effect to that intention when they moved for judgment on the verdict in the amount of $28,683.53—$25,000 less than the verdict.

release to be a covenant not to sue Daentl and Wisconsin Mutual which did not extinguish the Balk's cause of action against Farmers in whole or in part is not clearly erroneous. We reject Farmer's contention that *Loy, supra* note 2, requires that the *Loy* release satisfy $25,000 of the judgment against it. We therefore affirm.

## I.

## THE *PIERRINGER* RELEASE

Farmers is technically correct that *Pierringer, supra* note 3, requires that the judgment herein be reduced by the 45% of their claim which the Balks surrendered when they gave the *Pierringer* release to Roberts and Wisconsin Mutual. In *Pierringer,* 21 Wis. 2d at 193, 124 N.W.2d at 112, the court stated:

> Upon the trial the release should be given immediate effect, as it is for contribution purposes, and the judgment, if any, against the nonsettling defendant should only be for that percentage of negligence allocated to him by the findings or the verdict. The claim for the balance has been satisfied by the plaintiff ....

The trial court did not reduce the judgment by 45% but gave "immediate effect" to the *Pierringer* release when it found that:

> (1)   The ex-defendant, Joseph A. Roberts, an insured of ex-defendant Wisconsin Mutual Insurance Company, who was released by a Pierringer-type release, did not have a percentage of negligence attributable to him which exceeded the amount of $25,000.00. The plaintiffs' right to the balance of $28,683.53 was not affected.

345

The court was able to give effect to the intention of the parties as expressed in both releases because Roberts' percentage of negligence applied to the verdict did not exceed $25,000.

■

A *Pierringer*-type release operates to impute to the settling plaintiff whatever liability in contribution the settling defendant may· have to nonsettling defendants. *Fleming v. Threshermen's Mut. Ins. Co.,* 131 Wis. 2d 123, 131, 388 N.W.2d 908, 911 (1986). That is the effect of the judgment and Farmers has not been injured. In fact, had the verdict been reduced by 45%, the judgment against Farmers would have been greater. We reject Farmers' argument that the manner in which the judgment was constructed deprived it of its contribution rights.

We turn to Farmers' claim that the judgment must also be reduced by the $25,000 released by the *Loy* release.

## II.

## THE *LOY* RELEASE

Farmers acknowledges that a release should· be construed to give effect to the intention of the parties thereto. *Brown v. Hammermill Paper Co.,* 88 Wis. 2d 224, 233–34, 276 N.W.2d 709, 713 (1979). However, it argues that if the intent of the parties can be determined from the face of the release, there is no need to resort to extrinsic evidence intended to show the parties' intentions. *Voluntary Assign. of Watertown Tr. & Equip. Co.,* 94 Wis. 2d 622, 638, 289 N.W.2d 288, 295 (1980). Farmers argues that the "clear language" of sub. (1) of the *Loy* release "credits and satisfies" $25,000 of the Balk's damages caused by the

negligence of Karla Daentl "or any other firm, person or corporation responsible for any such negligence."

Farmers relies on decisions which state the general rules of construction of contracts. *Brown, supra,* establishes a rule which gives effect to the intention of the parties and applies peculiarly to releases. The *Brown* rule was adopted to avoid the drastic effect of the common-law rule that release of one tortfeasor releases all joint tortfeasors. *Id.* at 232–33, 276 N.W.2d at 712–13. Under the common-law rule, a plaintiff's general release operates not only in personam on the releasees and their liability, but also in rem on the releasor's cause of action. *Id.* at 232, 276 N.W.2d at 712.

As the *Brown* court observed:

> Recent legal history has witnessed extensive changes in the common-law rule:
> "The clear trend of the law is to hold that an agreement releasing one joint tortfeasor must be construed in accordance with the intention of the parties. It is generally agreed that if the document shows on its face that it was not the intention of the injured party to relinquish his claim against the other joint tortfeasors, as where he expressly reserves his right of action against them or when it appears that the payment he received was not accepted as full satisfaction, it will be regarded as a covenant not to sue, no matter what its form.
> "As the courts have said, ' "the issue of whether a separate settlement with one joint tortfeasor is made in full satisfaction or is made as a lesser compromise with the purpose of pursuing the other tortfeasors, is a factual one which will properly turn on the intention of the parties ...."' ...." 2

Williston, [*Contracts* (3d ed. 1959), Release of Joint Tortfeasors, sec. 338A] at 722–23.

A release is a unilateral contract and the intention of the parties as to its scope and effect is relevant. In construing a release the court must read the instrument in its entirety. The intent of the parties must be sought from the whole and every part of the instrument and from the surrounding conditions and circumstances. While great liberality is allowed in construing releases, the operation will be limited to those things within the contemplation of the parties at the time of execution of the release. The determination of the intent of the parties to a release and of the scope of the release is a question of fact for the trier of facts.

*Id.* at 233–34, 276 N.W.2d at 713.

■

The trial court found that the *Loy* release was a covenant not to sue Daentl and Wisconsin Mutual and that the parties to the releases did not intend to satisfy more than $25,000 of the Balk's cause of action. This finding is supported by sub. (4) of the *Loy* release in which the Balks agree to dismissal with prejudice of their action against Daentl and Wisconsin Mutual "but not as to Farmers or any obligation Farmers may have by virtue of liability insurance coverage applicable to Karla A. Daentl's alleged negligence." The court's finding that the Balks did not intend to relinquish their claim against Farmers is not clearly erroneous. Sec. 805.17(2), Stats.

Farmers argues, however, that to reserve a claim against the excess insurer, a *Loy* release must satisfy the following: (1) the releasor must credit the payment made by the primary insurer against any recovery

against the excess insurer to the extent of the policy limits of the primary insurance policy, and (2) the nonsettling excess insurer must not be prejudiced by the settlement nor called upon to pay any loss that might be paid by the primary carrier.

Farmers claims that in order to satisfy these conditions the *Loy* release must be construed to release it from the first $25,000 of Daentl's liability. *Loy,* 107 Wis. 2d at 420–21, 320 N.W.2d at 186–87, does not require that the plaintiff who settles with an insurer who has primary coverage must release the excess insurer to the extent of the settlement. That was the effect of the release in *Loy,* at 429, 320 N.W.2d at 191, but only because primary coverage insured only one defendant. *Loy* did not involve the unusual situation presented here where the primary insurer insures the liability of two defendants under a policy with limits insufficient to satisfy the claims against both its insureds. The fact that the excess insurer in *Loy* was released to the extent of the primary insurer's policy limits was a function of the factual circumstances of the case and not the law.

*Loy,* at 418, 320 N.W.2d at 185, requires that the settlement agreement contain no "fundamental unfairness" with respect to the excess insurer. There is no fundamental unfairness so long as the excess insurer "cannot, under the release, be liable for more than it contracted to pay." *Id.* Farmers is not prejudiced by the settlement herein because it is not asked to pay more than it contracted to pay.

*By the Court.*—Judgment affirmed.