ST. CLARE HOSPITAL OF MONROE,
WISCONSIN, a Wisconsin non-stock, not-for-profit corporation, Plaintiff-Appellant,†

v.

SCHMIDT, GARDEN, ERICKSON, INC., an
Illinois corporation, Robert F. Lange and John
Does I-X, Alias, formerly d/b/a Schmidt,
Garden & Erickson, formerly an Illinois
partnership, J.P. Cullen & Son Construction
Corporation, a Wisconsin corporation, and J.P.
Cullen & Sons, Incorporated, a Wisconsin
corporation, Defendants-Appellants,

NORTHWESTERN NATIONAL INSURANCE
COMPANY OF MILWAUKEE, a Wisconsin
corporation, Defendant,

GILBRALTAR CASUALTY COMPANY, a
Delaware corporation, Defendant-Appellant,

INDIANA INSURANCE COMPANY, an Indiana
corporation, United States Fidelity & Guaranty
Co., a Maryland corporation, Federal Insurance
Company, a New Jersey corporation, ABC
Insurance Company or Companies, Alias DEF
Insurance Company or Companies, Aliases,
Defendants,

PIPKORN CORPORATION, a Delaware
corporation, the Standard Fire Insurance
Company, a/k/a Aetna Life & Casualty, a

---

† Petition to review denied.

Connecticut corporation, Hartford Accident & Indemnity Company, a Connecticut corporation, Defendants-Respondents.

Court of Appeals

*No. 87-1717. Argued October 20, 1988.—Decided January 12, 1989.*

(Also reported in 437 N.W.2d 228.)

For the plaintiff-appellant there were briefs by *Charles E. Burroughs* and *Robert E. Koenig* and *von Briesen & Purtell, S.C.,* of Milwaukee, and oral argument by *Robert E. Koenig.*

For the defendants-appellants there were briefs by *W. Wayne Siesennop* and *M. Susan Maloney* and *Godfrey, Trump & Hayes,* of Milwaukee, and oral argument by *W. Wayne Siesennop.*

For the defendants-appellants J. P. Cullen & Son Construction Corporation and J. P. Cullen & Sons Incorporated, there was a brief by *Margaret B. Grabowski* and *Brennan, Steil, Ryan, Basting and MacDougall, S.C.,* of Janesville, and oral argument by *Margaret B. Grabowski.*

For the defendant-respondent Pipkorn Corporation there was a brief by *James C. Alexander* and *Sauthoff, Alexander & Mundt,* of Madison, and oral argument by *James C. Alexander.*

For the defendants-respondents The Standard Fire Insurance Company the cause was submitted on the brief of *Richard E. Hemming* and *Mark A. Schroeder* and *Consigny, Andrews, Hemming & Grant, S.C.,* of Janesville.

For the defendant-respondent Hartford Accident and Indemnity Company the cause was submitted on the brief of *Randy S. Parlee* and *Peterson, Johnson & Murray, S.C.,* of Milwaukee.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J.   We granted St. Clare Hospital leave to appeal a nonfinal order dismissing its products liability claim against Pipkorn Corporation, the supplier of bricks for an addition to the hospital facility. The order also dismissed claims for contributions from Pipkorn brought by the architect for the project (Schmidt, Garden, Erikson, Inc.) and the general contractor (J.P. Cullen & Son Construction). While Schmidt, Garden, Erickson (SGE) and Cullen agree with the trial court's resolution of the issues, they have filed cross-appeals in order to protect their contribution claims in the event of an appellate ruling that the claims were improperly dismissed.

The issue is whether a release given by St. Clare to Pipkorn pursuant to a settlement agreement released all claims, and all liability, involving the defective condition of the bricks. The trial court answered the question in the affirmative, as do we. We therefore affirm the order.

The material facts are not in dispute. The hospital addition was completed in 1971, and several years later the bricks began to crumble. St. Clare sued all defendants, asserting causes of action in both strict (products) liability and negligence. The trial court ruled that because neither SGE nor Cullen had anything to do with placing or maintaining the bricks in the stream of commerce, neither could be held liable on a strict liability theory. No appeal was taken on that issue. As a result, no strict liability claims exist against either SGE or Cullen. The manufacturer of the bricks, the Locher Brick Company, is insolvent and was not named as a party in this action.

Pipkorn and St. Clare executed a "Pierringer"-type release[1] in which, in exchange for an undisclosed amount of money, St. Clare agreed to release all claims against Pipkorn and to indemnify Pipkorn for any sums it might be ordered to pay by way of contribution to any other party. Specifically, the release provided that:

> [T]he Hospital ... declares satisfied ... that fraction, portion or percentage of its total claims which shall ... be determined to be the result of negligence or any other cause of action against Pipkorn and for which liability to the Hospital as a consequence of the use of said allegedly defective brick ... is attributed to Pipkorn.
>
> [In addition,] the Hospital agrees to indemnify Pipkorn ... and ... to hold [Pipkorn] harmless from any claims for contribution made by others adjudged jointly liable with Pipkorn ... and the Hospital agrees to satisfy any judgment which may be rendered in favor of the Hospital by such fraction, portion or percentage of responsibility for

---

[1]*Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

the judgment as may be attributed to Pipkorn's negligence.

Based on the release, Pipkorn moved for dismissal of St. Clare's complaint against it, and also for dismissal of the cross-claims for contribution filed by SGE and Cullen. The trial court granted the motion, holding that the agreement between St. Clare and Pipkorn released all liability for the defective brick—including that of the non-party manufacturer, Locher. St. Clare contends that this was error and that, despite Pipkorn's release, it still should be able to seek recovery from the remaining negligent tortfeasors, SGE and Cullen, for Locher's share of responsibility for placing the bricks in the stream of commerce.

A release is a contract and is construed as such. *Peiffer v. Allstate Ins. Co.,* 51 Wis. 2d 329, 336, 187 N.W.2d 182, 185 (1971). The document must be considered in its entirety, and the intent of the parties ascertained from its language and from the surrounding circumstances. *Brown v. Hammermill Paper Co.,* 88 Wis. 2d 224, 233–34, 276 N.W.2d 709, 713 (1979).

The first quoted paragraph of St. Clare's release does two things, and it does them in undeniably plain language. First, it satisfies any liability for *negligence* that ultimately may be attributed to Pipkorn. Second, it releases Pipkorn from any and all liability arising from the defective bricks—that is, from any *strict liability* resulting from its role in the sale or distribution of the bricks. And because Pipkorn is the only party to the action against whom any strict liability claims exist, the trial court held that the effect of the release was to satisfy all such liability.

The second paragraph of the release is equally plain in its language. It requires St. Clare to indemnify Pipkorn against any claim for contribution by the other defendants. It is a "Pierringer"-type release which "operates to impute to the settling plaintiff whatever liability in contribution the settling defendant may have to nonsettling defendants." *Balk v. Farmers Ins. Exchange,* 138 Wis. 2d 339, 346, 405 N.W.2d 792, 795 (Ct. App. 1987).[2]

Under the trial court's ruling, only the negligence claims remain in the action; and while they remain as to all defendants, any negligence that may be found against Pipkorn has already been settled by St. Clare. As a result, SGE and Cullen will pay only such proportion of St. Clare's damages as the jury ultimately may assess for their negligence, and St. Clare may not look to them for such damages in strict liability as may be assessed against Locher.

St. Clare argues, however, that its "strict liability" claim based on the defective condition of the bricks is really a claim based on negligence—"negligence *per se*"—and that the non-party manufacturer, Locher, is thus a "joint tortfeasor" with SGE and Cullen. As a result, St. Clare contends that, should SGE and Cullen

---

[2]St. Clare suggests that *Balk* and other cases standing for the same proposition are inapposite because they deal only with contribution claims by nonsettling defendants against a settling "joint tortfeasor"—not claims by negligent defendants against a settling "strict liability" defendant, as in this case. We fail to see the distinction. As we have said, the terms of the indemnity section of Pipkorn's release are plain and unambiguous: St. Clare is to hold Pipkorn harmless from any contribution claims from the other defendants. By so doing, it "imputes" whatever liability Pipkorn may have in contribution to SGE or Cullen to St. Clare, just as in *Balk* and similar cases.

be found negligent in constructing the addition, accepted principles of joint and several liability would permit the hospital to recover from SGE and Cullen for any strict liability the jury may assess against the insolvent, unsued party, Locher. We disagree. Strict liability is not the equivalent of negligence.

The concept of strict products liability, as adopted by the supreme court in *Dippel v. Sciano,* 37 Wis. 2d 443, 155 N.W.2d 55 (1967), "focuses[] not on the failure to exercise ordinary care, but on whether the seller has marketed a dangerously defective product." *Shawver v. Roberts Corp.,* 90 Wis. 2d 672, 682, 280 N.W.2d 226, 231 (1979). Strict liability is "products liability." *Dippel,* 37 Wis. 2d at 449, 155 N.W.2d at 57. It is a liability based not on the violation of any standard of care, or any other negligent act, but solely on the defective condition of a product. *Id.* at 459, 155 N.W.2d at 63. And it is imposed only on manufacturers, distributors and sellers—those who place or maintain the product in the stream of commerce. *Id.* Indeed, it has been said that the two concepts—strict liability and negligence—are "mutually exclusive," Ghiardi & Koehn, *Punitive Damages in Strict Liability Cases,* 61 Marq. L. Rev. 245, 247 (1977), and the supreme court has held that the rule of strict liability "does not impose liability for negligence at all. It imposes liability for tort...." *Greiten v. La Dow,* 70 Wis. 2d 589, 603, 235 N.W.2d 677, 685 (1975).[3] The "act" to which Locher's or Pipkorn's responsibility

[3]Although the opinion of (now) Chief Justice Heffernan from which the quotation is taken appears in the reports as a concurring opinion, it is, in fact, the opinion of the majority of the court and has been considered as such in succeeding supreme court cases. *See, e.g., Howes v. Deere & Company,* 71 Wis. 2d 268, 274, 238 N.W.2d 76, 80 (1976).

attaches is not an act of negligence. If indeed it is an act at all, it is simply the act of placing or maintaining a defective product in the stream of commerce. *Id.* at 604, 235 N.W.2d at 686.

St. Clare disagrees and quotes from *Dippel* to the effect that strict liability is "akin" to negligence *per se* and that "[c]omparison of [ordinary negligence] and negligence per se is so common and widely approved in our jurisdiction as to need no citation." *Dippel,* 37 Wis. 2d at 462, 155 N.W.2d at 64. In St. Clare's words, "negligence is negligence."

Taking the *Dippel* quote in context, however, it is apparent that the court's reference to negligence *per se* was for the sole purpose of finding a way to fit the "new" concept of strict products liability into Wisconsin's comparative negligence system. And the way the court chose to do so was to analogize strict liability to the historic concept of negligence *per se* which, like strict liability, is not dependent upon foreseeability or "fault" in the usual sense of the term. *Id.,* 37 Wis. 2d at 461–62, 155 N.W.2d at 64. This limited purpose was made clear in *Greiten,* 70 Wis. 2d at 603, 235 N.W.2d at 685, where the court stated:

> [Strict liability] does not impose liability for negligence at all. It imposes liability for tort, and it is only for the purposes of fitting the *Dippel* rationale into the framework of our comparative negligence statute that we refer to it as negligence, albeit, a legal-policy type of negligence per se.

The occasional, sometimes unexplained, references to negligence *per se* in strict liability cases, and the jury instruction and verdict forms which ask jurors in strict liability cases to take a leap of logic, if not faith, by treating the "defective condition" of a product as

758

"negligence,"[4] have created some confusion in the area, as the supreme court itself has recognized. *Howes v. Deere & Company,* 71 Wis. 2d 268, 274, 238 N.W.2d 76, 80 (1976). We are satisfied, however, that the occasional references to negligence *per se* in products liability cases and in the pattern jury instructions do not, as St. Clare would have it, inseparably wed the two theories of liability in all circumstances. Indeed, comparing strict liability and negligence

> is ... comparing apples and oranges, for [strict liability] is based upon the public-policy premise that a seller is socially responsible for what he [or she] puts into the stream of commerce irrespective of [the] degree of care .... On the other hand, negligence is based upon a theory of fault. We look in the ordinary negligence case not ... to the result of the defendant's action, but rather to his [or her] conduct in attaining that result. *Greiten,* 70 Wis. 2d at 604, 235 N.W.2d at 686.

Neither SGE nor Cullen were in the chain of distribution of the defective bricks, and thus they could not under any circumstances be held strictly liable for the bricks' entry or movement in that chain. And, consistent with the "deep pocket" rule of joint and several liability (which allows a plaintiff to recover all damages from any one of several jointly-responsible parties), Pipkorn, as the only solvent party in the chain of distribution, would be liable for all damages arising

---

[4]The sample "strict liability" verdict form at Wis J I—Civil 3290 asks whether the product was defective, and whether "such defective condition" was a cause of injury to the plaintiff. The introduction to the comparison question informs the jurors that "such conduct on the part of the seller constitutes negligence," and asks them to apportion that "negligence" between "the product" and "the plaintiff."

from the defective condition of the bricks. *City of Franklin v. Badger Ford Truck Sales,* 58 Wis. 2d 641, 652, 207 N.W.2d 866, 871 (1973). Because St. Clare's settlement agreement with Pipkorn satisfied the entire "product" liability claim, that claim is no longer a part of the case and the trial court properly ruled that all responsibility for placing the defective product in the stream of commerce has been extinguished. It may be that, in the end, St. Clare released more than it wanted to, but we can only judge the case on the language of the release, the relationship among the parties to the lawsuit, and the applicable law.

■ Unlike the negligent tortfeasor whose liability is based on his or her acts (or failure to act), the liability of strictly liable tortfeasors arises not from any conduct on their part, but from the nature or condition of a product. As a result, where a settling plaintiff assumes the strictly liable tortfeasor's share of responsibility for the damages, leaving only ordinarily negligent tortfeasors as defendants, the plaintiff has assumed all of the liability attributable to the product. Here, Pipkorn is the only party potentially liable to St. Clare based on strict liability for the defective condition of the bricks. Because St. Clare has released Pipkorn from all liability arising from the condition of the product, it has, in effect, released the product from the lawsuit.

■ As to the negligent (as opposed to strictly liable) tortfeasors, SGE and Cullen—and Pipkorn, if any negligence on its part can be proved—St. Clare's right to pursue and recover from them, in proportion to their responsibility for its damages, remains intact. Obviously, because of the settlement agreement, any such liability on Pipkorn's part has been settled. But St.

760

Clare may still attempt to establish negligence on the part of SGE and Cullen—and even on the part of Locher, should it choose to do so—and recover the damages caused by the negligence of any of these entities pursuant to existing rules of negligence, liability and contribution.

*By the Court.*—Order affirmed.