159 F.3d 993
 Prod.Liab.Rep. (CCH) P 15,316
Jennifer D. GEBOY, as the personal representative of the
Estate of Randall L. Matezevich, and Gregory L.
Matezevich, by his guardian, Jennifer D.
Geboy, Plaintiffs-Appellants,
v.
TRL INC., State Farm Fire and Casualty Insurance Co.,
Industrial Plant Services, Chalmers and Kubeck,
Inc., and Imtoe Industries, Inc.,
Defendants-Appellees.
 No. 97-3572.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 27, 1998.
Decided Aug. 14, 1998.
 
 Kenneth Baumgartner (argued), Kenosha, WI, for Plaintiffs-Appellants.
 Gordon P. Giampietro (argued), Michael, Best & Friedrich, Milwaukee, WI, for Defendant-Appellee TRL Inc.
 Russell M. Ware, O'Hagan, Smith & Amundsen, Racine, WI, for Defendant-Appellee State Farm Fire and Cas. Ins. Co.
 W. Wayne Siesennop (argued), Hannan Siesennop & Sullivan, Milwaukee, WI, for Defendant-Appellee Industrial Plant Services.
 Paul J. Pytlik (argued), Otjen, Van Ert, Stangle, Lieb & Weir, Milwaukee, WI, for Defendant-Appellee Chalmers & Kubeck, Inc.
 David R. Kelly, Bowman & Brooke, Minneapolis, MN, Ronald C. Wernette, Jr., Bowman & Brooke, Detroit, MI, for Defendant-Appellee Imtoe Industries, Inc.
 Before BAUER, EASTERBROOK, and ROVNER Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 Randall Matezevich suffered fatal injuries in an industrial accident at his place of employment when his clothing became entangled in the rotating drive shaft of a vertical boring mill. Jennifer Geboy, as the personal representative of the deceased's estate, and Gregory Matezevich, by his guardian Jennifer Geboy, brought this state court action against TRL Inc., the company that sold the vertical boring mill to the deceased's employer. The complaint alleged that TRL is liable under the doctrine of strict liability or negligence for the fatal injuries Randall Matezevich suffered as the result of a defective and unreasonably dangerous condition of the vertical boring mill.
 
 
 2
 TRL removed the action to federal court and filed a third party claim against Chalmers and Kubeck, Inc., Industrial Plant Services, and Imtoe Industries, Inc., as prior owners in the chain of distribution of the vertical boring mill, for indemnification and/or contribution. Plaintiffs subsequently filed an amended complaint, alleging direct causes of action for strict liability or negligence against each defendant named in TRL's third party complaint. Defendants then filed separate motions for summary judgment. The district court held that under Wisconsin law the defendants were not strictly liable under the terms of § 402A of the Restatement (Second) of Torts nor were they liable under common law negligence. The court granted defendants' motions for summary judgment and dismissed the complaint. Geboy, in her capacity as the representative of the deceased's estate, and Gregory Matezevich, by his guardian, now appeal. We affirm.
 
 BACKGROUND
 
 3
 As a preliminary matter, we adopt the district court's extensive findings of fact as articulated in its opinion. See Geboy v. TRL, Inc., et al., 976 F.Supp. 1202 (E.D.Wis.1997). In our background discussion, we paraphrase the lower court's opinion and include a brief summary of its findings of fact, in particular the chain of possession and distribution of the vertical boring mill. We also review the procedural history of this action.
 
 
 4
 Despite extensive discovery, neither the manufacturer nor the date of the manufacture of the vertical boring mill has been established. It appears likely that the mill was manufactured in the 1960s or early 1970s in East Germany and then imported to the United States. In September of 1984, Chalmers and Kubeck purchased the mill in a disassembled condition from an entity not involved in this lawsuit.[1] Chalmers and Kubeck, a manufacturer of industrial machine products, purchased the vertical boring mill to use in its manufacturing plant. After the purchase, however, Chalmers and Kubeck acquired a different machine which better suited its purposes and subsequently transferred the vertical boring mill in its disassembled condition to a warehouse in Pennsylvania, which was owned by Industrial Plant Services. Industrial Plant Services stored the machine and upon authorization from Chalmers and Kubeck offered the vertical boring mill for sale. Approximately one year later, Imtoe Industries purchased the mill from Industrial Plant Services, without any warranties and still in its disassembled condition. Imtoe Industries acquired the vertical boring mill on October 30, 1991 and then sold it the next day to TRL. While the machine was in the possession of Chalmers and Kubeck as well as Industrial Plant Services and for the short period of time that Imtoe Industries owned it, the vertical boring mill was never operated or even assembled.
 
 
 5
 To understand TRL's position in the chain of distribution, we backtrack a few months to discuss the facts and circumstances that explain its role in the purchase and sale of the vertical boring mill. John Tabor, the owner of Tabor Mining and Manufacturing Company ("Tabor Mining") in Racine, Wisconsin, contacted TRL because he was interested in purchasing a vertical boring mill to use in Tabor Mining's industrial operations. TRL located a vertical boring mill through Imtoe Industries and shortly before Imtoe Industries purchased it, Tabor visited the Industrial Plant Services warehouse to inspect the machine in its disassembled condition. TRL purchased the vertical boring mill from Imtoe Industries on October 31, 1991 and arranged for it to be shipped to the Tabor Mining plant directly from the Industrial Plant Services warehouse. Tabor Mining took possession of the vertical boring mill soon thereafter. TRL never had physical custody of the machine but retained ownership because Tabor Mining purchased it on a collateral basis. The vertical boring mill was shipped to Tabor Mining in its disassembled condition along with manuals, drawings, and books related to its assembly. Tabor Mining assembled the vertical boring mill and retained possession until the date of Matezevich's accident.
 
 
 6
 On December 7, 1994, Randall Matezevich, a Tabor Mining employee, died when his clothing became entangled in the rotating drive shaft of the vertical boring mill. This action was brought by Jennifer Geboy, on behalf of the deceased's estate and in her capacity as the guardian of their son, who was approximately two months old at the time of his father's death. The plaintiffs originally filed suit in Wisconsin state court against TRL, who removed the case to federal district court based on diversity of citizenship and then filed a third party action against Chalmers and Kubeck, Industrial Plant Services, and Imtoe Industries, seeking indemnification and/or contribution from the prior owners in the chain of distribution of the vertical boring mill. The district court granted plaintiffs leave to amend, and they filed a third amended complaint, asserting direct causes of action for strict liability or negligence against Chalmers and Kubeck, Industrial Plant Services, and Imtoe Industries in addition to TRL.
 
 
 7
 The defendants then filed individual motions for summary judgment, generally arguing that under Wisconsin law they could not be held strictly liable for an alleged defect in the vertical boring mill because they were not sellers "engaged in the business of selling such products" as defined by the terms of § 402A of the Restatement (Second) of Torts. The defendants also challenged plaintiffs' argument that they were liable under a theory of common law negligence, arguing that under Wisconsin law they did not have an affirmative duty to warn subsequent purchasers of an alleged defect or dangerous condition in a used product of which they had no notice.
 
 
 8
 After reviewing the evidence submitted, the district court concluded that summary judgment was appropriate. The district court found that neither Chalmers and Kubeck nor Industrial Plant Services was engaged in the business of selling within the meaning of § 402A of the Restatement, and therefore, strict liability did not apply under Wisconsin law. The court also concluded that Chalmers and Kubeck and Industrial Plant Services did not have an affirmative duty to warn subsequent owners of any dangerous conditions of which they had no notice. As for TRL and Imtoe Industries, the district court determined that each acted solely as a broker in the sale of the vertical boring mill and concluded that under Wisconsin law, strict liability would not be imposed on a mere broker or conduit of used industrial equipment. The district court also concluded that brokers would not be subject to liability for negligence under Wisconsin law. Accordingly, the district court granted defendants' motions for summary judgment and dismissed the complaint.
 
 
 9
 Plaintiffs filed a timely notice of appeal. On appeal, they argue that the district court failed to properly apply Wisconsin law on strict liability in addition to theories of common law negligence and erroneously granted defendants' motions for summary judgment. Plaintiffs contend that the district court failed to view all facts and to make all reasonable inferences from those facts in their favor as required by summary judgment standards, arguing that the court's findings of fact are contrary to the evidence submitted and unsupported by the record. We now turn to the issues presented for review.
 
 ANALYSIS
 
 10
 Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. C IV. P. 56(c). We review the record and draw all reasonable inferences from it in the light most favorable to the non-moving party. The mere existence of some alleged factual disputes between the parties does not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. This appeal involves the resolution of legal issues under Wisconsin law, which we review de novo, and not issues of fact that require further inquiry. McGinn v. Burlington Northern R. Co., 102 F.3d 295, 298 (7th Cir.1996).
 
 
 11
 Plaintiffs contend that the district court misapplied the principles of strict liability under Wisconsin law. In Dippel v. Sciano, 37 Wis.2d 443, 155 N.W.2d 55 (1967), Wisconsin adopted the doctrine of strict liability as set forth in § 402A of the Restatement (Second) of Torts. Generally, this rule imposes liability on "manufacturers, distributors and sellers--those who place or maintain the product in the stream of commerce." St. Clare Hosp. of Monroe, Wisconsin v. Schmidt, Garden, Erickson, Inc., 148 Wis.2d 750, 437 N.W.2d 228, 231 (1989). Imposing strict liability on manufacturers, distributors, and sellers is designed to impose liability on the party in the best position to control the risk of harm a product might cause once put into the stream of commerce. Westphal v. E.I. duPont de Nemours & Co., Inc., 192 Wis.2d 347, 531 N.W.2d 386, 390 (1995). Conversely, a seller who does not place or maintain a product in the stream of commerce and who has neither created nor assumed the risk of harm for a defective product is not strictly liable. Id.
 
 
 12
 To recover under strict liability, five conditions must be satisfied: (1) the product was in defective condition when it left the possession or control of the seller; (2) the product was unreasonably dangerous to the user or the consumer; (3) the defect was the cause, or a substantial factor, of the plaintiff's injuries or damages; (4) the seller was engaged in the business of selling such a product; and (5) the seller expected the product to reach the consumer or user, and it did reach the user, without substantial change in the condition of the product when it was sold. Dippel, 155 N.W.2d at 63; see also R ESTATEMENT (S ECOND) OF T ORTS § 402A. The threshold condition considered by the district court was whether the defendants qualified as sellers "engaged in the business of selling such products" as defined by § 402A of the Restatement; if the defendants did not qualify as sellers, summary judgment was appropriate.
 
 
 13
 As an initial matter, we recognize that Wisconsin has adopted a minority theory of recovery under the doctrine of strict liability. In Nelson by Hibbard v. Nelson Hardware, Inc., 160 Wis.2d 689, 467 N.W.2d 518 (1991), the Wisconsin Supreme Court concluded that the language of § 402A does not limit itself to new products but applies to any product, thereby extending the imposition of strict liability to sellers engaged in the business of selling used products. 467 N.W.2d at 521. Our focus is not on the product at issue because it is undisputed that this case involves used industrial machinery; rather, we primarily focus on the routine activities of each defendant's business to determine whether any of the defendants are sellers "engaged in the business of selling" as contemplated by § 402A of the Restatement. We first consider Chalmers and Kubeck and Industrial Plant Services and then Imtoe Industries and TRL.
 
 
 14
 Plaintiffs contend that strict liability should be imposed on Chalmers and Kubeck and Industrial Plant Services because they are prior owners in the chain of possession and distribution who have experience with vertical boring mills and industrial machinery generally. Even though the Wisconsin Supreme Court ultimately extended the imposition of strict liability to sellers of used products in Nelson, the Court limited its holding, concluding that strict liability applies only to those in the business of selling and does not apply to those who are not engaged in that activity as part of their business. Id. at 523 (citing R ESTATEMENT (S ECOND) OF T ORTS § 402A, Comment f). A person not in the business of selling such products and who did not create the risk by manufacturing the defective product cannot be strictly liable for injuries arising from that product. Rolph v. EBI Companies, 159 Wis.2d 518, 464 N.W.2d 667, 672 (1991).
 
 
 15
 Under plaintiffs' rationale, every party in the chain of distribution would be strictly liable for a defective product regardless of how peripheral its involvement might be (assuming, of course, that the other four conditions required to impose strict liability were satisfied). Occasional sellers, such as Chalmers and Kubeck and Industrial Plant Services, who are not manufacturers, distributors, or sellers, cannot be considered to be "engaged in the business of selling" for purposes of strict liability. Their function in the chain of distribution, at best, can be described as isolated and infrequent participants. Chalmers and Kubeck manufactures industrial machine products and the only time it becomes involved in the sale of used machinery is when it replaces equipment used in its manufacturing process and disposes of the machine which is no longer needed. Chalmers and Kubeck purchased the vertical boring mill to use in its manufacturing operations and then replaced it with another machine more suitable to its manufacturing process; the sale of the mill was an isolated transaction that is not related to Chalmers and Kubeck's principal business.
 
 
 16
 As for Industrial Plant Services, the record shows that it services, repairs, and installs industrial machinery. There is no evidence to support plaintiffs' argument that Industrial Plant Services is engaged in the business of selling new or used machinery; it simply agreed to warehouse the vertical boring mill for one of its customers, Chalmers and Kubeck, and then offered it for sale only upon authorization from Chalmers and Kubeck. In fact, this isolated sale of the vertical boring mill is the only sale in which Industrial Plant Services has been involved since the start of its business. Notwithstanding the fact that Chalmers and Kubeck and Industrial Plant Services are prior owners in the chain of possession and distribution of the vertical boring mill, it is evident from the record that neither entity is "engaged in the business of selling" as required in Wisconsin for the imposition of strict liability. We conclude that summary judgment was appropriate as a matter of law.
 
 
 17
 Plaintiffs assert similar arguments for the imposition of strict liability on Imtoe Industries and TRL, arguing that the district court erroneously concluded that each was merely a broker in the sale of the vertical boring mill. It is an undisputed fact that certain business activities of both Imtoe Industries and TRL involve the sale of used industrial equipment, which obviously includes a vertical boring mill; Imtoe Industries and TRL admit that they participate in transactions which include the sale and purchase of used industrial machinery. Plaintiffs argue that those admissions, standing alone, viewed in a light most favorable to them as required under the summary judgment standard of review, should have precluded summary judgment. We do not agree; that argument misapprehends the facts in evidence and misconstrues the district court's ruling. Imtoe Industries and TRL are "sellers" of used machinery in that they facilitate the sale of used industrial equipment between two independent parties, a buyer and a seller, but their involvement in those transactions does not make them "sellers engaged in the business of selling" within the meaning of § 402A of the Restatement.
 
 
 18
 On appeal, plaintiffs argue that Nelson dictates a reversal of the district court. However, the holding in Nelson is premised on the assumption that the defendant was engaged in the business of selling, and the issue presented was whether § 402A was limited to new products only. The Wisconsin Supreme Court ultimately concluded that a buyer of used goods is not precluded from the protection of § 402A simply because the product is not purchased new and as a result extended the imposition of strict liability to sellers of used products. That theory, however, is not the issue in the instant appeal; instead, this case turns on the threshold issue of whether "selling," as contemplated by the Restatement, is a primary activity of the defendants' businesses. In comparison, we consider another Wisconsin Supreme Court case, albeit a case preceding Nelson, where the Court concluded that the imposition of strict liability on a seller of a used product was not appropriate under § 402A. See Burrows v. Follett and Leach, Inc., 115 Wis.2d 272, 340 N.W.2d 485 (1983).
 
 
 19
 In Burrows, the Wisconsin Supreme Court concluded that a seller of used farming equipment was not strictly liable for injuries sustained by the plaintiff when he became entangled in an unguarded power shaft. The Court articulated certain factors it considered, which we find relevant to identify: (1) whether the seller/dealer of the used goods had any direct relationship with either the manufacturer or distributor through which information could be exchanged on possible dangerous defects; (2) whether any representation as to the safety of the used product was discussed or implied in its sale; and (3) whether the seller/dealer had the ability to identify any potential risk and to reduce that risk. Id. at 490. We find these factors instructive in our analysis of Wisconsin law in light of the issues presented for our review.
 
 
 20
 The application of strict liability in tort is premised on certain public policy considerations which assumes that the manufacturer/seller is in the paramount position to distribute the costs of the risks created by the defective product he is selling. Westphal, 531 N.W.2d at 390. In agreement with the district court's determinations, we find that neither Imtoe Industries nor TRL qualifies as being engaged in the business of selling under the terms of § 402A of the Restatement. In fact, the district court also identified some essential considerations in its opinion: (1) whether the seller/broker had physical possession of the used product or had inspected it; and (2) for what purpose did the seller/broker take title to the used product. Geboy, 976 F.Supp. at 1211. One justification for strict liability suggests that the seller, by marketing his product whether new or used, has assumed a special responsibility toward any subsequent purchaser, who relies on the seller's representation that the product is safe. RESTATEMENT (S ECOND) OF T ORTS § 402A, Comment c. This rationale is based on the assumption that reputable sellers stand behind their goods. Id. A broker of used products does not necessarily assume that responsibility; a broker is more of a middleman, who negotiates the sale and purchase of a product for a commission.
 
 
 21
 As brokers of used machinery, Imtoe Industries and TRL provide means by which sellers can advertise their used industrial equipment for sale and purchasers have access to a centralized source that lists equipment for sale; realization of a financial gain is not sufficient reason to impose strict liability under § 402A. Nothing in Wisconsin law indicates that the Wisconsin Supreme Court would impose strict liability on an entity that acts solely as a conduit in the sale of used equipment, particularly when neither Imtoe Industries nor TRL inspected the vertical boring mill, and never had physical possession of the mill. After a careful review of the record, we similarly conclude that summary judgment was appropriate on this issue.
 
 
 22
 Alternatively, plaintiffs argue that the district court failed to apply the common law theory of negligence as recognized in Wisconsin and erroneously concluded that the defendants were not negligent in their failure to warn subsequent purchasers of an alleged dangerous condition. Unlike strict liability tortfeasors, whose liability is based upon the nature and the condition of the product, a person's potential liability for negligence is based on the failure to act. Glassey v. Continental Ins. Co., 176 Wis.2d 587, 500 N.W.2d 295, 301 (1993). Plaintiffs' theory of recovery is premised on the allegation that the fatal injuries suffered by Randall Matezevich resulted from a design defect or dangerous condition in the vertical boring mill in that there was no guard to shield the rotating drive shaft of the machine, and that defendants were negligent and breached their duty when they failed to warn subsequent purchasers of this defect.
 
 
 23
 To recover under a theory of negligence, a plaintiff must show: (1) the existence of a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) damages resulted from that injury. Coffey v. City of Milwaukee, 74 Wis.2d 526, 247 N.W.2d 132, 135 (1976). When someone owes a duty to another person, reasonable care must be exercised with respect to that person and the existence of a duty is premised on the foreseeability of an unreasonable risk of harm, which is determined by an objective standard examining what a reasonable person of ordinary prudence could foresee under the same or similar circumstances. Id. In determining the issue of negligence, a primary consideration is the defendant's conduct. St. Clare Hosp., 437 N.W.2d at 232. Whether summary judgment was appropriate turns on the question of whether any of the current defendants had an affirmative duty to act.
 
 
 24
 Plaintiffs have failed to cite any Wisconsin authority that supports the imposition of liability for negligence on a party who is in the chain of distribution, but has never assembled, inspected, nor used the product. We first consider the alleged negligence of Chalmers and Kubeck and Industrial Plant Services. As previously discussed, both of these defendants had minimal contact with the vertical boring mill; neither company had any occasion to foresee an unreasonable risk of harm in that neither Chalmers and Kubeck nor Industrial Plant Services had the opportunity (or affirmative duty for that matter) to view the rotating drive shaft of the vertical boring mill in operation and to discover a potential risk of harm. To expose every business that comes into contact with a product to potential liability "would shock the conscience of society because it would have no sensible or just stopping point." Rolph, 464 N.W.2d at 673. We find that the plaintiffs have failed to create any issue of triable fact that either Chalmers and Kubeck or Industrial Plant Services had an affirmative duty to subsequent owners. Summary judgment was appropriate, and dismissal of the negligence claims was proper.
 
 
 25
 In regard to the negligence claims against Imtoe Industries and TRL, we similarly agree with the district court's determination that a mere broker of used machinery who neither inspects the equipment nor offers any guaranty or warranty of any sort does not have a duty to subsequent owners and certainly is not negligent for failing to warn the purchaser of an unreasonably dangerous condition of which it had no notice. As discussed above, liability based on negligence is premised on a person's failure to act when he or she had an affirmative duty to do so; the existence of that duty is premised on the foreseeability of an unreasonable risk of harm, which necessarily requires actual or constructive notice of the dangers of the product.
 
 
 26
 Given the undisputed facts of this case, neither Imtoe Industries nor TRL ever had physical possession of the vertical boring mill, let alone assembled the machine to notice that the rotating drive shaft was unguarded. We similarly conclude that public policy dictates a limitation of liability as to Imtoe Industries and TRL under the facts of this case. As stated above, exposing every business that comes into contact with a used product to potential liability is not the solution to correcting defects created by manufacturers. We find nothing in our review of Wisconsin law that would suggest the state's willingness to extend liability for negligence to a person or entity that had such a limited role in this type of a transaction. We conclude that neither Imtoe Industries nor TRL would be liable for negligence under Wisconsin law.
 
 CONCLUSION
 
 27
 We A FFIRM the district court's order granting the defendants' motions for summary judgment and dismissing the complaint.
 
 
 
 [1]
 Both the district court and the parties involved in this lawsuit use the words "unassembled" and "disassembled" interchangeably despite the slight variation in meaning. "Unassembled" indicates that something has never been put together or assembled while "disassembled" means that something was assembled at one point and subsequently taken apart. This difference in meaning, however, is inconsequential to the resolution of this appeal because the vertical boring mill remained in its disassembled condition (assuming at some point prior to 1984, the vertical boring mill was assembled) throughout the chain of distribution, at least with respect to the prior owners named in this lawsuit, until Tabor Mining ultimately purchased and assembled the machine. In this opinion, we use the term "disassembled."