Robert D. COOPER, et al., Plaintiffs,

v.

ZIMMER HOLDINGS, INC.,
et al., Defendants.

No. 03–2628–JWL.

United States District Court,
D. Kansas.

June 9, 2004.

Brian S. Franciskato, Johnnye L. Dennis, Richard E. McLeod, McLeod, Nash &

Franciskato, Kansas City, MO, for Plaintiffs.

Abigail M. Butler, Baker & Daniels, Fort Wayne, IN, Harvey L. Kaplan, Micah L. Hobbs, Jon A. Strongman, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Thomas G. Stayton, Baker & Daniels, Indianapolis, IN, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiffs Robert D. Cooper and Jeraldean Cooper filed this action in state court against defendants Zimmer Holdings, Inc., Zimmer Productions, Inc., Zimmer US, Inc., Zimmer, Inc., and Zimmer Maxon Associates.[1] Plaintiffs assert claims of strict liability, negligence, breach of implied and express warranties, loss of consortium, and a violation of the Kansas Consumer Protection Act, Article 6, § 50–601 *et seq.* Defendants[2] removed the action to this court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. The matter is presently before the court on plaintiffs' motion to remand (Doc. 31).

As set forth more fully below, the court grants plaintiffs' motion to remand. In opposing the motion, defendants contend that the plaintiffs have fraudulently joined the only non-diverse party to this action, Zimmer Maxon (Steven D. Maxon Associates, Inc. d/b/a/ Zimmer Maxon Associates). The plaintiffs' allegations and evidentiary submissions in support of their motion, however, demonstrate that the defendants cannot prove that there has been actual fraud in the pleading of jurisdictional facts or that there is no possibility that plaintiffs will be able to establish a cause of action against Zimmer Maxon in state court.

## BACKGROUND

Plaintiffs are residents of Kansas. Defendants are Delaware corporations with their principal places of business in Indiana.[3] Zimmer Maxon, however, is a Missouri corporation with its principal place of business in Kansas.

Defendants are in the business of developing, manufacturing and selling certain orthopedic implants and devices.[4] Defendants utilize sales representatives to solicit orders and service accounts for the purchase of their implants and devices. Zimmer Maxon is a sales organization that sells the defendants' products exclusively. The President of Zimmer Maxon is required to devote his sole business and occupation to the organization and he and his organization are prohibited from selling other companies' orthopedic products implants and devices. While title to the Zimmer products pass directly from defendants to its customers, Zimmer Maxon is

---

1. By order dated April 19, 2004, Steven D. Maxon Associates, Inc. d/b/a Zimmer Maxon Associates ("Zimmer Maxon") was substituted for defendant Zimmer Maxon Associates.

2. For the sake of clarity and consistent with the parties' filings, the court will refer to Zimmer Holdings, Inc., Zimmer Productions, Inc., Zimmer US, Inc., and Zimmer, Inc. collectively as "Zimmer" or the "defendants." The court will refer to Steven D. Maxon Associates, Inc. d/b/a/ Zimmer Maxon Associates as "Zimmer Maxon."

3. Consistent with the standard governing this motion, all factual disputes are resolved in favor of the non-removing party. *Montano v. Allstate Indem.*, 211 F.3d 1278, 2000 WL 525592, at *1–2 (10th Cir. April 14, 2000).

4. In light of the protective order in this case (Doc. 29) and the order requiring certain documents to be filed under seal (Doc. 43), the court has not disclosed any proprietary information from Zimmer's distribution agreement or its policy and procedure manual. Non-proprietary facts relating to those agreements or manuals were disclosed in supporting documents that were not filed under seal or discussed by the defendants in their supporting memorandum.

responsible for soliciting the sale and it receives a commission on all products sold to accounts in its territory.

In 1997, plaintiff Robert D. Cooper received a total elbow replacement in his left arm. Zimmer Maxon selected and provided each of the replacement elbow component parts, manufactured by Zimmer, and delivered them to the operating room at the University of Kansas Medical Center. In 2001, in the absence of any injury, Mr. Cooper began to experience severe pain and lack of mobility in his left elbow. Subsequently, Mr. Cooper underwent a revision arthroplasty to remedy his condition. Plaintiffs contend that the corrective elbow surgery was required because the Ultra High Molecular Weight Polyethylene components used in the original surgery (that were manufactured by Zimmer and distributed by Zimmer Maxon) were gamma sterilized and packaged in air, which accelerated the oxidation process and caused the polyethylene components to degrade prematurely. Plaintiffs also allege that Zimmer Maxon knew of this oxidation phenomenon and failed to warn Mr. Cooper or his treating physicians.

Plaintiffs commenced this lawsuit on November 11, 2003, by filing an action in state court in Wyandotte County, Kansas. Plaintiffs alleged eight separate counts including theories of strict liability, negligence, breaches of implied and express warranties, loss of consortium, and a violation of the Kansas Consumer Protection Act. Defendants each received service of a Summons and a Complaint on the same day. Zimmer Maxon received service of a Summons and a Complaint on December 1, 2003, by personal service.

On December 11, 2003, defendants timely filed a notice of removal. Plaintiffs filed a timely motion to remand the case to the District Court of Wyandotte County, Kansas on April 9, 2004.

## STANDARD FOR REMOVAL

■ A civil action is removable only if a plaintiff could have originally brought the action in federal court. 28 U.S.C. § 1441(a). The court is required to remand "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Id.* § 1447(c). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against federal jurisdiction. *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974). The party invoking the court's removal jurisdiction has the burden to establish the court's jurisdiction. *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir.1995). The court must resolve any doubts in favor of remand. *Fajen v. Found. Reserve Ins. Co.,* 683 F.2d 331, 333 (10th Cir.1982).

## ANALYSIS

A defendant may remove any civil action brought in a state court if a federal court has original jurisdiction over the claim. 28 U.S.C. § 1441(a). A federal court has original jurisdiction over diversity actions where the matter in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a). Defendants contend that this court has diversity jurisdiction because plaintiffs are citizens of Kansas and defendants are Delaware corporations with principal places of business in Indiana. While conceding that defendant Zimmer Maxon is a Missouri corporation with its principal place of business in Kansas, the defendants allege that plaintiffs fraudulently joined this defendant to destroy the court's diversity jurisdiction.[5]

■ It has long been held that the right of removal cannot be defeated by "a

---

**5.** Plaintiffs have alleged that they suffered damages in excess of $75,000.

fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Fraudulent joinder is a term of art, it does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant. *Chilton Private Bank v. Norsec–Cook, Inc.*, 99 B.R. 402, 403 (N.D.Ill.1989). Defendants bear the burden of proving fraudulent joinder. *Getty Oil Div. of Texaco v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir.1988); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983). This burden is indeed a heavy one, as the Tenth Circuit has explained:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is *no* possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has *any* possibility of recovery against the party whose joinder is questioned.

*Montano v. Allstate Indem.*, No. 99–2225, 211 F.3d 1278, 2000 WL 525592, at *1–2 (10th Cir.2000)[6] (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir.2000), and *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 n. 3 (2d Cir.1998)) (emphasis added). This standard is more exacting

than that for dismissing a claim under Fed.R.Civ.P. 12(b)(6). *Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach, LLP*, No. Civ. A. 02–2435–CM, 2003 WL 21313957, at *5 (D.Kan. May 23, 2003).

Thus, to defeat plaintiffs' motion to remand it is incumbent upon defendants to show that there is no possibility that plaintiffs would be able to establish a cause of action against Zimmer Maxon in state court. To resolve the issue, the court examines the claims plaintiff has asserted against Zimmer Maxon.

## I. Kansas Product Liability Act Claims

Plaintiffs have alleged several theories of product liability (including strict liability, negligence, and breach of implied and express warranties) against defendant Zimmer Maxon. Defendants argue, however, that Zimmer Maxon is not a "product seller," and therefore not subject to liability under the Kansas Product Liability Act ("KPLA") K.S.A. § 60–3301 *et seq.* Alternatively, defendants argue that even if Zimmer Maxon is a "product seller" under the KPLA, it is entitled to the seller immunity provisions set forth at K.S.A. § 60–3306. The court addresses each argument in turn.

### A. Have Defendants Established that there is no Possibility that Zimmer Maxon was a "Product Seller" under the KPLA?

In 1981, the Kansas Legislature adopted the Kansas Product Liability Act. In doing so, the Legislature clearly declared that the public policy of the state was to "to limit the rights of plaintiffs to recover in

---

**6.** The court recognizes that pursuant to 10th Cir. R. 36.3(B) that citation to unpublished decisions is disfavored. The Tenth Circuit, however, has not clearly set forth the evidentiary standard applicable to fraudulent joinder claims in previous published opinions. Moreover, the court's analysis in *Montano* has persuasive value with respect to this issue and

it assists this court in the disposition of the pending motion. *See* 10th Cir. R. 36.3(B)(1)-(2) (explaining that unpublished decisions may be cited if they have persuasive value with respect to a material issue not addressed in a published opinion and it would assist the court in its disposition).

product liability suits generally and to judge a product for an alleged defect only when it is first sold." *Patton v. Hutchinson Wil–Rich Mfg. Co.*, 253 Kan. 741, 752, 861 P.2d 1299 (1993). To achieve this purpose, the KPLA contains provisions that limit in different ways the ability of a plaintiff to recover. *Delaney v. Deere & Co.*, 268 Kan. 769, 778, 999 P.2d 930 (2000); *see, e.g.*, K.S.A. § 60–3303 (eliminating liability for harm caused after the useful safe life of the product); K.S.A. § 60–3304 (providing that a product is not defective where it complied with regulatory standards at the time of manufacture); K.S.A. § 60–3305 (providing that duty to warn shall not extend to certain situations); and K.S.A. § 60–3306 (limiting liability for sellers under certain conditions). These protections extend to product sellers and manufacturers, K.S.A. § 60–3302(a)–(b), and apply to "all product liability claims regardless of the substantive theory of recovery." *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 126, 795 P.2d 915 (1990). "Therefore . . . the provisions of the Act apply to actions based on strict liability in tort as well as negligence, breach of express or implied warranty, and breach of or failure to discharge a duty to warn or instruct." *Id.* As such, all of plaintiffs' theories of recovery that sound in product liability are merged into one product liability claim.

Defendants contend that Zimmer Maxon is not subject to liability under any theory of product liability because it is not a "product seller" under the KPLA, or "engaged in the business of selling" a product under the Restatement (Second) of Torts § 402A (1965). Without deciding the ultimate merits of the defendants' theories, the court simply concludes that they have not established that there is no possibility that plaintiffs could establish a product liability claim against Zimmer Maxon in state court.

The KPLA defines a "product seller" to include "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption." K.S.A. § 66–3302(a). "The term includes a manufacturer, wholesaler, *distributor* or retailer of the relevant product. . . ." *Id.* (emphasis added). Defendants contend that Zimmer Maxon is not a product seller because it neither acquires nor passes title to the product during the course of a sales transaction. Plaintiffs contend that Zimmer Maxon is a distributor of the product in question and therefore subject to the provisions of the KPLA. The court believes that there is some possibility that plaintiffs could overcome defendants' statutory interpretation in state court.[7]

---

7. Defendants' argument assumes that being a "product seller" is a condition precedent to asserting a product liability claim against Zimmer Maxon. Indeed, in an unpublished opinion, Judge Marten has suggested that the KPLA provides for liability against "product sellers" of defective products and that those who are not engaged in the business of selling a product are not liable under K.S.A. § 60–3302(a). *Williams v. KOPCO, Inc.*, No. Civ. A. 94–1451–JTM, 1998 WL 159516 (D.Kan. March 31, 1998). Of course, *Williams* is not binding on a Kansas state court, and there is reason to believe that the KPLA is merely a statutory mechanism that limits a manufacturer or seller's liability, and not a statute providing plaintiffs with an independent right of action. As explained above, the purpose of the Act is to limit a plaintiff's ability to recover in a product liability suit. Moreover, the statute does not expressly provide plaintiffs with a right of action. Instead, the Act appears to presuppose the existence of a duty and then limit that duty by the terms of the statute. For example, K.S.A. § 60–3305 provides that "[i]n any product liability claim any duty on the part of the . . . seller of the product to warn or protect against a danger or hazard which could or did arise in the use or misuse of such product, and any duty to have properly instructed in the use of such product

Defendants' argument that the transfer of title is a prerequisite to being a "product seller" is founded upon the definition of a sale under the Uniform Commercial Code. Under Article 2 of the Uniform Commercial Code, a "seller" is a "person who sells or contracts to sell goods." K.S.A. § 84–2–103. "A 'sale' consists in the passing of title from the seller to the buyer for a price." K.S.A. § 84–2–106(1). The Kansas Legislature, however, defined a "product seller" under the KPLA as an entity, including a distributor, engaged in the sale of a product. The KPLA's definition does not include a "transfer of title" requirement in its definition. The KPLA is patterned after the Model Uniform Product Liability Act ("MUPLA"), 44 Fed. Reg. 62, 714 *et seq.* (1979). *Miller v. Lee Apparel Co., Inc.,* 19 Kan.App.2d 1015, 1023, 881 P.2d 576 (1994). Like the KPLA, the MUPLA does not impose a "transfer of title" requirement in its definition of "product seller." *See* 44 Fed.Reg. at 62,717. Defendants have cited no authority, and the court has found none in its independent research, suggesting that the Uniform Commercial Code should be used to supplement the definitions provided within the KPLA. Moreover, there are conceivable reasons why a Kansas court would decline to do so. First, given that the Kansas Legislature decided to define the term "product seller" without reference to any "transfer of title" requirement, the state court might conclude that the Kansas Legislature did not intend to impose this requirement under the KPLA.

*See, e.g., McGuire v. Sifers,* 235 Kan. 368, 379, 681 P.2d 1025 (1984) (employing the reasoning that had the legislature intended to abrogate the doctrine of respondeat superior as to professional corporations, it could have and would have done so through the enactment of specific and definitive legislation). Second, the state court might find that a broader definition of the term "product seller" is more consistent with the purpose of the KPLA. As discussed above, the KPLA is designed "to limit the rights of plaintiffs to recover in product liability suits generally and to judge a product for an alleged defect only when it is first sold." *Patton,* 253 Kan. at 752, 861 P.2d 1299. Consistent with this purpose, a more expansive definition of the term "product seller" (one that did not impose a transfer of title requirement) would extend these protections to a wider class of defendants. As such, there is some possibility that the Kansas court would refuse to import the UCC's definition of "sale" into the KPLA's definition of "product seller."

Defendants also contend that case law interpreting the Restatement (Second) of Torts § 402A (1965) bolsters their interpretation. This Restatement section provides that:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) *the*

---

shall not extend..." to various situations set forth in this section. This section does not define the duty to warn, but merely limits liability in certain circumstances. To this extent the KPLA does not pattern the Model Uniform Product Liability Act in that the latter expressly defines a manufacturer and seller's basic standards of responsibility. *See* 44 Fed.Reg. 62,714, 62,721–62,728 (1979). If the KPLA is merely a statutory limitation on liability, then Zimmer Maxon would have to

prove it is a product seller to be entitled to its protections, and whether or not plaintiffs proved Zimmer Maxon was a "product seller" would not necessarily control the viability of their common law claims. The court does not rely on this argument in granting the plaintiffs' motion to remand, however, given its finding that the state court could find that Zimmer Maxon is a product seller under the KPLA.

*seller is engaged in the business of selling such a product,* and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A(1)(a)-(b) (emphasis added). In 1976, Kansas adopted this rule of strict liability. *Brooks v. Dietz,* 218 Kan. 698, 702, 545 P.2d 1104 (1976). Commentary to the Restatement explains that this rule "applies to any person engaged in the business of selling products for use or consumption." Restatement (Second) of Torts § 402A cmt. f. As such, the rule "therefore applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant." *Id.* In contrast, "[t]he rule does not...apply to the occasional seller...who is not engaged in that activity as a part of his business." *Id.*

Defendants argue that Zimmer Maxon is merely a sales broker or a conduit between Zimmer and its customers, and that such entities are not "engaged in the business of selling" a product under section 402A. In support of this claim, defendants rely on the Seventh Circuit's opinion in *Geboy v. TRL Inc.,* 159 F.3d 993 (7th Cir.1998). In *Geboy,* the Seventh Circuit addressed whether defendants were liable for injuries plaintiffs sustained from an allegedly defective vertical boring mill. *Id.* at 995. The vertical boring mill in question was manufactured in East Germany sometime in the 1960s or 1970s and subsequently imported into the United States. *Id.* at 996. In September of 1984, Chalmers and Kubeck, Inc. purchased the vertical boring mill in a disassembled condition. *Id.* Chalmers and Kubeck, however, never used the mill because it acquired a different machine that better suited its purposes. *Id.* As such, Chalmers and Kubeck transferred the mill in its disassembled condition to a warehouse owned by Industrial Plant Services. *Id.* With the approval of

Chalmers and Kubeck, Industrial Plant Services offered the vertical boring mill for sale. *Id.* On October 30, 1991, Imtoe Industries acquired the mill in its disassembled condition from Industrial Plant Services. The following day, Imtoe sold the vertical boring mill to TRL. TRL acquired the vertical boring mill on behalf of John Tabor, the owner of Tabor Mining. *Id.* Mr. Tabor had previously contacted TRL because he was interested in purchasing a vertical boring mill in his industrial operations. TRL purchased the vertical boring mill and arranged for it to be shipped to the Tabor Mining plant directly from the Industrial Plant Services warehouse. *Id.* Tabor Mining took possession of the vertical boring mill soon thereafter. *Id.* While TRL never had physical custody of the machine, it retained ownership because Tabor Mining purchased it on a collateral basis. *Id.* On December 7, 1994, Randall Matezevich, a Tabor Mining employee, died when his clothing became entangled in the rotating drive shaft of the vertical boring mill. *Id.* Jennifer Geboy brought an action on behalf of the deceased's estate and in her capacity as the guardian of their son against Chalmers and Kubeck, Industrial Plant Services, Imtoe Industries, and TRL. *Id.* Plaintiffs originally filed suit in Wisconsin state court, but TRL removed the case to federal court. *Id.* The district court granted summary judgment in favor of defendants. *Id.* at 997. Specifically, the district court found that Chalmers and Kubeck and Industrial Plant Services were not engaged in the business of selling within the meaning of § 402A. *Id.* As to Imtoe and TRL, the district court found that they acted solely as a broker in the sale and concluded that under Wisconsin law, strict liability would not be imposed on a mere broker or conduit of used industrial equipment. *Id.*

On appeal, plaintiffs argued that the district court erroneously concluded that Im-

toe Industries and TRL were merely brokers and not subject to liability. *Id.* at 999. In analyzing the claim, the Seventh Circuit, borrowing from a Wisconsin Supreme Court decision, found the following factors to be instructive when considering whether or not an entity is a seller "engaged in the business of selling" within the meaning of § 402A:

> (1) whether the seller/dealer of the used goods had any direct relationship with either the manufacturer or distributor through which information could be exchanged on possible dangerous defects; (2) whether any representation as to the safety of the used product was discussed or implied in its sale; and (3) whether the seller/dealer had the ability to identify any potential risk and to reduce that risk.

*Id.* (citing *Burrows v. Follett and Leach, Inc.,* 115 Wis.2d 272, 340 N.W.2d 485, 490 (1983)).

The Seventh Circuit found these factors to be relevant, in part, because "[o]ne justification for strict liability suggests that the seller, by marketing his product whether new or used, has assumed a special responsibility toward any subsequent purchaser, who relies on the seller's representation that the product is safe." *Id.* at 999–1000 (citing Restatement (Second) of Torts § 402A, cmt. c.). "This rationale is based on the assumption that reputable sellers stand behind their goods." *Id.* at 1000. In affirming the district court, the Seventh Circuit noted that "[a] broker of used products does not necessarily assume that responsibility; a broker is more of a middleman, who negotiates the sale and purchase of a product for a commission." *Id.*

Assuming that a Kansas court would find *Geboy* to be persuasive authority, there is a possibility that plaintiffs could distinguish it from the facts in this case. According to the plaintiffs' evidence of-

fered in support of their motion to remand, Zimmer Maxon was more than a mere conduit between a buyer and a seller. Zimmer Maxon, according to the plaintiffs' evidence, is a sales organization that deals exclusively with Zimmer products. It is not permitted to deal in other products. Zimmer Maxon sales associates demonstrated the orthopedic devices to surgeons, provided them with information about surgical techniques, and answered questions about the products. In his deposition, Steven D. Maxon admitted that prior to the date of Mr. Cooper's surgery, Zimmer provided him with reprints of scientific studies ("white sheets") that addressed the possibility of delamination of Ultrahigh Molecular Weight Polyethylene components. Mr. Maxon further testified that upon request or when he needed to address a specific concern, his company would provide surgeons with copies of these white sheets. Thus, it is not beyond the realm of possibility that a Kansas court would find that unlike the facts in *Geboy,* here, Zimmer Maxon: (1) had a direct relationship with the manufacturer through which information concerning dangerous defects could be shared; and (2) that Zimmer/Maxon had the ability to identify any potential risk and to reduce that risk. If so, the court could find that Zimmer Maxon owed a duty to plaintiffs based on the factors set forth in *Geboy.* 159 F.3d at 999; *see also Sedbrook v. Zimmerman Design Group, Ltd.,* 190 Wis.2d 14, 526 N.W.2d 758 (Wis. App.1994) (finding that district court erred in granting summary judgment in favor of distributer/broker in product liability action where it was the only company in the area that sold the allegedly defective product, it was the manufacturer's representative, it had familiarized itself with the products in order to better market them, it routinely contacted architects to encourage them to include the product in their de-

signs, and advertising brochures identified it as the distributor).

Once again, the court emphasizes that it is not intending to advocate one party's interpretation of the term "product seller" over the others. In fact, the defendants could ultimately prevail on their statutory interpretation. What the defendants have not demonstrated, however, is that there is no possibility that plaintiffs could state a claim against Zimmer Maxon in state court. Instead, plaintiff has set forth valid arguments supporting their claim that Zimmer Maxon is a "product seller" under the KPLA. Because the court is required to resolve all ambiguities in the controlling law in favor of the non-removing party, *Montano*, 211 F.3d 1278, 2000 WL 525592, at *1–2, it must assume that the term "product seller" does not include a "transfer of title" requirement. Similarly, the court must also assume that Zimmer Maxon is more than a mere conduit in the sales transaction between Zimmer and its clients. As such, the court finds that the state court could possibly find that Zimmer Maxon is "engaged in the business of selling" Zimmer products. Given these assumptions the court finds that there is a possibility that plaintiffs could establish that Zimmer Maxon is a product seller subject to liability under the KPLA.

### B. Have Defendants Established that, Pursuant to K.S.A. § 60–3306, there is no Possibility that Zimmer Maxon would be Subject to Liability for any Claim Arising from the Alleged Product Liability Claim?

Alternatively, defendants contend that even if Zimmer Maxon is a product seller, it would not be subject to liability under the KPLA. The KPLA provides that a product seller shall not be subject to liability in a product liability claim arising from an alleged defect in a product, if the product seller establishes the following facts: (a) *Such seller had no knowledge of the defect;* (b) such seller in the performance of any duties the seller performed, or was required to perform, could not have discovered the defect while exercising reasonable care; (c) the seller was not a manufacturer of the defective product or product component; (d) the manufacturer of the defective product or product component is subject to service of process either under the laws of the state of Kansas or the domicile of the person making the product liability claim; and (e) any judgment against the manufacturer obtained by the person making the product liability claim would be reasonably certain of being satisfied. K.S.A. § 60–3306(a)–(e) (emphasis added).

As stated above, the President of Zimmer Maxon testified in his deposition that he knew, prior to the date of Mr. Cooper's elbow replacement surgery, that the medical community was exploring the possibility that the Ultrahigh Molecular Weight Polyethylene components were subject to delamination, which could accelerate oxidation in the component parts used in elbow replacement surgeries. Defendants dispute this evidence, but when construed in the light most favorable to the non-removing party, it is sufficient to show that there is a possibility that Zimmer Maxon would not be able to invoke the seller protections set forth in K.S.A. § 66–3306. *See Frontier Airlines, Inc. v. United Air Lines, Inc.*, 758 F.Supp. 1399, 1405 (D.Colo.1989) (explaining that court must resolve all disputes of fact in favor of the non-removing party).

### II. Kansas Consumer Protection Act Claim

In addition to alleging various theories of product liability, plaintiffs also con-

tend that Zimmer Maxon engaged in deceptive acts and practices in violation of the Kansas Consumer Protection Act ("KCPA").[8] *See* Count IX of Complaint. The KCPA provides that "[n]o *supplier* shall engage in any deceptive act or practice in connection with a consumer transaction." K.S.A. § 50–626(a) (emphasis added). Deceptive acts and practices include, but are not limited to, the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact. K.S.A. § 50–626(b)(3). The KCPA defines a supplier to include "a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer." K.S.A. § 50–624(i). The Kansas Supreme Court has defined the term "supplier" broadly to include entities that merely facilitate transactions. In *Alexander v. Certified Master Builders Corp.*, 268 Kan. 812, 1 P.3d 899 (2000), defendant argued that it should not be included in the definition of a supplier because it was a trade agency that merely informed or accommodated its members in a transaction. *Id.* at 826, 1 P.3d 899. The court, however, found that defendants played a material role in the transactions in question. The facts indicated that defendant promoted the home building industry, distributed a brochure to the general public encouraging them to contract with defendant's members, and advertised its programs in newspapers. *Id.* Under these facts, the court concluded that defendant was a supplier under K.S.A. § 50–624(i). *Id.* at 826, 1 P.3d 899. Moreover, the court rejected defendant's argument that it was merely an accommodating party and, thus, should not be termed to be a

supplier in light of the fact that it solicited consumers through its advertising and distribution of brochures. *Id.* Here, plaintiffs have submitted evidence suggesting that Zimmer Maxon played a material role in soliciting sales from Zimmer customers. Based on this evidence and the above authority, the state court could find that Zimmer Maxon is a supplier under the KCPA.

While the KPLA applies to all legal theories of product liability (negligence, breach of express or implied warranty, and breach of or failure to discharge a duty to warn or instruct) and merges them into one single product liability claim, *Fennesy*, 18 Kan.App.2d at 65–66, 847 P.2d 1350, it is not clear whether plaintiffs' KCPA claim would merge with its product liability claim. The court has found no definitive authority on this issue, and there are several reasons why a state court might view plaintiffs' KCPA claim as an independent cause of action that is not subject to merger under the KPLA. First, the KPLA does not expressly provide that KCPA claims merge with other product liability theories. The KPLA identifies a wide variety of legal theories (including strict liability in tort, negligence, breach of express or implied warranty, failure to warn or instruct, misrepresentation, concealment or nondisclosure) that merge into a single product liability claim by operation of the statute. K.S.A. § 3302(c). The KPLA, however, does not specifically identify KCPA claims as one of the theories subject to merger, even though that Act predates the KPLA. Second, the KCPA and the KPLA target separate conduct. While the KPLA focuses on a manufacturer's and product seller's liability for placing defective products into the stream of commerce, the KCPA tar-

---

**8.** The court raises this issue sua sponte given that it implicates the court's subject matter jurisdiction. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Narvaez,* 149 F.3d 1269 (10th Cir.

1998) (sua sponte dismissing case for lack of diversity jurisdiction when claim did not exceed the requisite amount in controversy).

gets acts of deception and unconscionable business practices. K.S.A. § 50–623(b) (noting that the act shall be construed to liberally promote the policy of protecting consumers from suppliers who commit deceptive and unconscionable practices). Third, the KCPA creates its own private right of action nonexistent at common law. K.S.A. § 50–634; *Alexander*, 268 Kan. at 821, 1 P.3d 899. Fourth, the KCPA provides remedies to consumers that are not available under the KPLA. In particular, the KCPA provides consumers with the option of recovering actual damages or a civil penalty of up to $5,000 as an alternative for actual damages where the penalty would be a greater amount. K.S.A. § 50–634(b). The KCPA also authorizes the court to award reasonable attorney fees to a prevailing consumer. K.S.A. § 50–634(e). Fifth, KPLA claims and KCPA claims are governed by different statutes of limitation. *See Alexander*, 268 Kan. at 824–25, 1 P.3d 899 (holding that actions under the KCPA seeking damages and civil penalties are subject to the three-year statute of limitations found in K.S.A. § 60–512(2)); *Fennesy*, 18 Kan.App.2d at 66, 847 P.2d 1350 ( KPLA claim subject to the two-year statute of limitations in K.S.A. § 60–513). Finally, in other cases, plaintiffs have alleged and the court has treated KPLA and KCPA claims as independent causes of action. *See, e.g., Kestrel Holdings I, LLC, v. Learjet, Inc.*, No. Civ. A. 02–2399–CM, 2004 WL 954381 (D.Kan. 2004); *Johnston v. Agristor Credit Corp.*, No. 84–4421–S, 1987 WL 348509 (D.Kan. Nov. 23, 1987). For these reasons, the state court might conclude that plaintiffs' KCPA claim does not merge with its other theories of product liability.

Because plaintiffs' evidence suggests that Zimmer Maxon solicits consumer transactions in the ordinary course of its business, there is a possibility that the state court would find it to be a supplier under the KCPA and consider this claim independent of plaintiffs' product liability claim.

## CONCLUSION

In the end, the court finds that defendants have failed to demonstrate that there is no possibility that plaintiffs would be able to establish a cause of action against Zimmer Maxon in state court. As to its product liability claims, the state court could possibly find Zimmer Maxon to be a "product seller" that is not entitled to the immunity provisions set forth at K.S.A. § 60–3306. Moreover, there is some possibility that the state court would find Zimmer Maxon to be a supplier under the KCPA and conclude that this claim does not merge with plaintiffs' product liability claim.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiffs' motion to remand (Doc. 31) is granted.